## CHARLES v. UNITED STATES.

### (Circuit Court of Appeals, Fourth Circuit. February 4, 1914.)

### No. 1200.

1. POST OFFICE (§ 35*)—MISUSE OF MAILS—"SCHEME TO DEFRAUD"—NATURE OF SCHEME.

It is not essential, in order to constitute a scheme to defraud to be effectuated by use of the post office establishment in violation of Cr. Code, § 215 (Act March 4, 1909, c. 321, 35 Stat. 1130 [U. S. Comp. St. Supp. 1911, p. 1653]), that the scheme or device is plausible and reasonably adapted to justify a person of ordinary comprehension and prudence in acting to his injury by presenting allurements of a specious and glittering promise, but it is sufficient that the plan discloses any scheme to defraud by which it is sought to obtain the goods of others by false representations as to the thing they are to receive in return for their property, so that, where accused by use of the mails sought to obtain whisky from another by means of checks which accused knew would not be paid for want of funds, his act constituted a scheme to defraud within the statute.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig. § 35.*]

2. CRIMINAL LAW (§ 822*)—TRIAL—INSTRUCTIONS—PORTIONS OF CHARGE.

Error cannot be assigned on a single sentence or even a lengthy paragraph in a charge, where the charge, considered as a whole, states the law fairly and impartially and the context affords a clear conception of the law bearing on the testimony.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1990, 1991, 1994, 1995, 3158; Dec. Dig. § 822.*]

<hr>

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. POST OFFICE (§ 50*)—USE OF MAILS TO DEFRAUD—INSTRUCTIONS.

Where, in a prosecution for misuse of the mails with intent to defraud by using forged bills of lading to obtain whisky from a carrier, the court charged that, even if accused had not altered or forged the bills, yet if he had written a letter with the hope that a chance would be afforded him to obtain ten drums of whisky by the mistake of the shipper in attaching a draft for a one-drum shipment to a ten-drum bill, and accused obtained possession of ten drums of whisky by reason of such mistake, and he had intended to do that when he adopted the plan of writing the letter to the seller, then he would be guilty of fraud in any event and would be guilty of using the mails for fraud if his intention was formed when the letter was written, another paragraph of the charge, that even if accused had not altered or forged the bills, yet if he wrote a letter asking for separate bills of lading for four separate shipments with the hope that, in sending out the drafts with the bills attached, they would become mixed and those for larger quantities would be attached to drafts for smaller quantities, thus enabling him by such mistakes to get possession of the larger shipments on payment of the smaller drafts, and he took advantage of such mistake, he would be guilty, was not misleading as instructing that it was only necessary for the government to prove that accused used the mails with a hope that an opportunity for fraud might be opened to him.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 87–89; Dec. Dig. § 50.*]

4. POST OFFICE (§ 35*)—MISUSE OF MAILS—SCHEME TO DEFRAUD.

Accused, by means of the post office establishment, ordered 22 drums of liquor to be shipped in four lots with one bill of lading for each lot. Two were for ten· drums each and the other two for one drum each. He requested that each bill be attached to a separate draft, and accordingly drafts were attached to the two bills for ten drums each, and a draft also attached to each of the bills for one drum. Accused paid the two drafts on the bills calling for one drum each, obtaining them, altered the figures so as to make them appear to be drafts for the two ten-drum shipments, obtaining one of the ten-drum shipments on the altered bill, and, on the railroad refusing to deliver the other shipment owing to the appearance of the altered bill, accused mailed the same to the shipper with a request that a new bill be sent him by mail for one drum, and on receipt of this he changed it so as to call for ten drums and obtained delivery. Held sufficient to show a misuse of the post office establishment in furtherance of a scheme to defraud in violation of Cr. Code, § 215 (Act March 4, 1909, c. 321, 35 Stat. 1130 [U. S. Comp. St. Supp. 1911, p. 1653]).

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig. § 35.*]

5. POST OFFICE (§ 50*)—OFFENSES AGAINST POSTAL LAWS—INSTRUCTIONS.

Since, in a prosecution for misuse ·of the mails in furtherance of a scheme to defraud, any plan or scheme with intent to defraud another by use of the post office establishment is prohibited, an instruction that the jury might infer a previous design to defraud from proof of the fraud was not objectionable as tending to withdraw from the jury the question whether accused had devised an artifice or scheme to defraud, or because of accused's theory that, even if a fraud had been committed, it was after the shippers of the goods which it was claimed accused had obtained by fraud by their own mistake had rendered it possible for ac·cused to commit it by an alteration of the bills of lading.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 87–89; Dec. Dig. § 50.*

Nonmailable matter, see notes to Timmons v. United States, 30· C. C. A. 79; McCarthy v. United States, 110 C. C. A. 548.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**6. CRIMINAL LAW (§ 782\*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.**

Where the court charged that the jury were the sole triers of all questions of fact, and as such should give such weight as they deemed proper to the testimony in determining the facts necessary to enable them to reach a correct conclusion, and that accused was presumed innocent until there was sufficient testimony to convince them that he was guilty beyond a reasonable doubt, an instruction that the testimony of the witnesses was undisputed and admitted, and the only question for the jury to decide was whether it was sufficient to convict, was not objectionable, in that there were issues of fact in the testimony, and it was the jury's duty to believe the testimony or not as they decided.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1847, 1849, 1851, 1852, 1877, 1878, 1880–1882, 1906, 1907, 1909–1911, 1960, 1966, 1967; Dec. Dig. § 782.\*]

**7. CRIMINAL LAW (§ 823\*)—MISUSE OF MAILS—GIST OF OFFENSE—CURE OF ERROR IN INSTRUCTION.**

Where, in a prosecution for misuse of the mails in furtherance of a scheme to defraud, the court charged that it was necessary, to convict, that the jury should find as a fact that a fraud was intended when accused mailed the letters in question or received letters in reply from the mails, an instruction that the gravamen of the case was the obtaining of the property fraudulently, given in response to an exception by accused's counsel, was not erroneous on the ground that the gravamen of the charge was not the fraudulent obtaining of the property, but the design of a scheme or artifice to defraud.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1992–1995, 3158; Dec. Dig. § 823.\*]

In Error to the District Court of the United States for the Western District of South Carolina, at Greenville; Henry A. M. Smith, Judge.

L. Marvin Charles was convicted of using the mails in furtherance of a scheme to defraud, and he brings error. Affirmed.

This is a criminal action tried in the United States District Court for the District of South Carolina. Two indictments were found against the plaintiff in error, hereinafter referred to as "defendant," charging him with using the United States mails for the purpose of fraud in violation of section 215 of the Criminal Code of the United States. Two cases were tried together at the same term the indictments were found and resulted in a verdict of guilty in each. For convenience we will refer to them as Nos. 26 and 27; these being the respective numbers given them on the docket in the lower court.

The indictment No. 26 charged six separate and distinct offenses in separate counts, but the grand jury found no bill on the fifth count. The scheme alleged in each count was, in substance, that the plaintiff in error, using letter paper with the letter head, "City Social Club, L. M. Charles, Proprietor," wrote and mailed an order for a shipment of whisky to be sent to him or the City Social Club, and accompanied the order with his personal check, and thereby represented that he had sufficient funds in the bank to meet the check, when as a matter of fact he had no funds in the bank, intending thereby to induce the shipper to ship the whisky, so that the plaintiff in error could obtain possession of it and convert it to his own use and thereby defraud the shipper.

In case No. 27 the scheme to defraud alleged is that the defendant ordered 22 drums of liquor from E. B. Gibson of Chattanooga, Tenn., to be shipped to Walter Miller at Pride, S. C. (a small railroad station near Union, S. C., at which latter place defendant lived and carried on his business). The whisky was to be shipped in four lots with one bill of lading for each lot. Two were for 10 drums each and the other two for one drum each.

The defendant requested that each bill of lading be attached to a separate draft on him and sent to the Citizens' National Bank of Union, S. C., for collection. Drafts amounting to $284 were attached to the two bills of lading

for 10 drums each, and the draft attached to one of the bills of lading for one drum was for $26.50, and the other was for $28.50. Defendant paid the two drafts for $26.50 and $28.50, respectively, thereby obtaining possession of the bills of lading attached thereto.

That the bills of lading attached to the drafts paid contained the number of drums as set out only in figures, to wit, "1"; the weight was only given in figures, to wit, "200"; that defendant obtained these bills of lading and changed them by placing a cipher after the figure "1" so as to make the number "10" and a cipher after the figure "200" so as to make the weight "2,000" pounds; that by this scheme defendant obtained delivery of one of the 10-drum shipments on one of the bills of lading; that, upon refusal of the railroad to deliver the other shipment owing to the appearance of the bill of lading, defendant in furtherance of the scheme to defraud mailed the same to Gibson with the request that a new bill of lading be sent him; that a duplicate bill of lading calling for one drum of liquor was sent to him by mail; that upon receipt of this bill of lading it was changed so as to call for 10 drums and the defendant thereby obtained delivery of the other 10 drums.

This scheme was charged in all three counts of the indictment; the first count being that for the purpose of carrying out the scheme defendant mailed a letter to Gibson inquiring for prices, the second being that he mailed a letter with the torn bill of lading, and third that he received a letter from Gibson relative to the four shipments and drafts.

The jury returned a verdict of guilty in each case.

Defendant was sentenced to imprisonment in the penitentiary for one year and to pay a fine of $500, the sentences to be concurrent, and from which judgment the case now comes here on writ of error.

W. C. Cothran, of Greenville, S. C. (Cothran, Dean & Cothran, of Greenville, S. C., on the brief), for plaintiff in error.

Arthur R. Young, Asst. U. S. Atty., of Charleston, S. C. (Ernest F. Cochran, U. S. Atty., of Anderson, S. C., on the brief), for the United States.

Before PRITCHARD and WOODS, Circuit Judges, and ROSE, District Judge.

PRITCHARD, Circuit Judge (after stating the facts as above). The defendant is indicted under section 215 of the Code, the material part of which, as respects this controversy, is in the following language:

"Whoever, having devised or intended to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, * * * shall, for the purpose of executing such scheme or artifice or attempting so to do, place, or cause to be placed, any letter, * * * in any post office, * * * of the United States, or shall take or receive any such therefrom, * * * shall be fined not more than $1,000, or imprisoned not more than five years or both."

The first enactment relating to this particular subject is to be found in 5480 of the Revised Statutes (U. S. Comp. St. 1901, p. 3696). This act was amended in 1889, at which time the subject of dealing in counterfeit and spurious money and other articles was included. In 1909 Congress enacted the Criminal Code at which time the scope of the act was still further enlarged, thereby showing that it is the intention of Congress to reach any and all classes of individuals who may form the intention of using the mails for fraudulent purposes.

It was undoubtedly the purpose of Congress in the enactment of this law to prevent the use of the mails by one for the purpose of carrying out any plan or scheme to defraud another.

The assignments of error relate solely to the refusal to grant the

instructions offered by the defendant, and to the charge of the learned judge who tried the case below, there being no motion to quash or demurrer filed to either indictments, nor were there any assignments of error based upon exceptions to evidence offered in the court below.

We will consider the first four assignments together; the first being as follows:

"That the court erred in refusing to instruct the jury that such a scheme or device must have been plausible and reasonably adapted to justify a person of ordinary comprehension and prudence by presenting to them the allurements of a specious and glittering promise."

By the second it is insisted that, notwithstanding the defendant may have conceived and intended to carry out an ingenious artifice or scheme, yet if his correspondence with the parties only disclosed ordinary business propositions, not calculated to deceive the unwary, he could not be convicted under this section.

The third is to the effect that the sending of a check with an order at a time when he knew that the same would not be honored is not the kind of artifice or scheme contemplated by the statute.

Fourth. "That the court erred in charging the jury that the proof of the scheme or artifice referred to in the statute would be supplied if the jury believed from the evidence that in the beginning the defendant intended to defraud and used the mails in effectuating that intention."

[1] In other words, it is contended as respects these assignments that, in order to render the defendant liable under the statute, it is necessary that there must appear more than an intention to defraud and to the use of the mails for such purpose; that the artifice or device must be of such character as to constitute a false representation—that is, such a scheme involving allurements of a specious and glittering promise. In other words, the defendant contends that a simple, ordinary false representation would not subject one to indictment under this section.

The evidence relative to this indictment tended to show that the plaintiff in error sent the various orders and checks as alleged in the first, second, third, fourth, and sixth counts; that the whisky was shipped on the faith of the checks and delivered to him; that the checks were presented and dishonored because he had no funds in the bank; and that he never made any effort to pay for the whisky or explain the transaction. All of these transactions were in close proximity in point of time. Evidence of several similar transactions occurring about the same time was introduced to show intent. There was evidence also which tended to show that there was no such organization as the City Social Club.

In the case of United States v. Loring (D. C.) 91 Fed. 881, Blodgett, District Judge, said:

"The object of the law was to prevent persons having fraudulent designs on others from using the post office as a means of effecting such fraud. It need not, in my opinion, be a fraud either at common law or by statute. It is enough if it was a scheme or purpose to defraud any persons of their money."

In the case of Wilson v. United States, 190 Fed. 427, 111 C. C. A. 231, the Circuit Court of Appeals for the Second Circuit held that:

"The purpose of the statute was broad enough to prevent the use of the mails to despoil the public, either by means of plain falsehoods, or by the most 'glittering, alluring and complicated contrivance.'"

In the case of Evans v. U. S., 153 U. S. 584, 14 Sup. Ct. 934, 38 L. Ed. 830, the defendant was charged with unlawfully procuring the surrender and delivery to himself of the funds of a national bank of which he was a director, and also there was a count of fraudulently aiding in procuring the discount of unsecured paper for the bank. That case is somewhat analogous to the case at bar. Justice Brown, who delivered the opinion of the court, among other things, said:

"While the mere discount of an unsecured note, even if the maker and the officer making the discount knew it was not secured, would not necessarily be a crime, if the maker believed that he would be able to provide for it at maturity; yet if his original intent was to procure the note to be discounted in order to defraud the bank, as charged in the count, every element of criminality is present. The case is not unlike that of purchasing goods or obtaining credit. If a person buy goods on credit in good faith, knowing that he is unable to pay for them at the time, but believing that he will be able to pay for them at the maturity of the bill, he is guilty of no offense even if he be disappointed in making such payment. But if he purchases them, knowing that he will not be able to pay for them, and with an intent to cheat the vendor, this is a plain fraud, and made punishable as such by statutes in many of the states."

In addition to the foregoing, it was held in the case of Harrison v. United States, 200 Fed. 662, 119 C. C. A. 78, that:

"The statutory 'scheme to defraud' may be found in any plan to get the money or property of others by deceiving them as to the substantial identity of the thing which they are to receive in exchange; and this deception may, of course, be by implication as well as by express words."

There are numerous other cases to the same effect; but we do not deem it necessary to refer to them, inasmuch as it seems to be well established that, where a plan discloses any scheme to defraud by which it is sought to obtain the goods of others by false representations as to the thing they are to receive in return for their property, it renders such person liable to indictment under this statute.

We are of the opinion that the learned judge was correct in charging the jury that if they found from the evidence that at the time the defendant mailed the checks accompanying the orders he knew that the same were drawn upon a bank in which he had no funds, and which he himself had no intention of paying, he would be guilty under the statute, provided they also found that at the time he mailed them he intended to defraud the party in whose favor such checks were drawn. In this instance it was clearly shown by the evidence that at the time the defendant drew these checks he was aware of the fact that he did not have any money to his credit in the bank upon which the same were drawn, and it was further shown that he made no effort to protect his checks after they were received at the bank.

The court below very properly submitted these facts together with the other circumstances bearing upon the question as to whether the defendant intended to use the checks as a scheme or artifice with the intention of defrauding the parties with whom he was dealing.

Under the circumstances, it is apparent that it was the intention

of the defendant to obtain the goods from the various parties with whom these transactions were had by inducing them to believe that the checks which he transmitted through the mails were good and that he had to his credit in the bank sufficient funds to pay the same when they were presented. We do not deem it necessary to discuss this question further than to say that in our opinion the learned judge stated the law clearly and gave the defendant the benefit of every instruction to which he was entitled under the circumstances.

The fifth assignment relates to case No. 27, and we will refer to this case as the Gibson case, inasmuch as it was discussed as such in the argument before us.

By the fifth assignment of error it is insisted that the court erred in charging the jury:

"That even if the defendant had not altered or forged the bills of lading, yet if he had written a letter asking for separate bills of lading for four separate shipments, with the hope that in sending out the drafts with the bills of lading attached, the bills of lading would become mixed, those for larger quantities being attached to the drafts for smaller quantities, thus enabling him by such mistakes to get possession of the larger shipments upon payment of the smaller drafts, and that he did take advantage of such mistake, then the defendant would be guilty of a violation of section 215, Penal Code; it being submitted that, in order to convict under said statute, there must appear more than a hope that an opportunity for fraud may be opened up to him, followed by the use of the mails to render the fruit of that hope possible of attainment it must appear that the defendant has devised an artifice or scheme displayed to his intended victim under 'false representations, false coloring, allurements, or embellishments calculated to deceive.'"

A careful consideration of all that part of the charge which relates to this point, in connection with the testimony, leads us to the conclusion that the jury could not have been misled by the same. It is made clear that the gravamen of the offense as charged was the use of the mails after having formed an intention to defraud the shipper.

It is well settled that a single sentence or even a lengthy paragraph in a charge cannot be treated as determining the correctness of the charge in its entirety; the proper method being to consider the charge as a whole, and if, when so considered, it appears that the court has clearly stated the law, a reversal will not be directed, even though it should appear that some portion of the same is subject to criticism.

[3] The charge considered as a whole states the law fairly and impartially, and its context afforded the jury a clear conception of the law bearing upon the facts as testified by the witness. The portion of the charge referred to is in the following language.

"Even if he had not altered or forged these bills, yet if he had written the letter with the hope that the chance would be that the wrong bill of lading would be attached to the wrong draft and when it came he took up the one drum draft, that is, that they handed him a ten drum bill of lading, and he knew that he was not entitled to it, though he did not alter that bill of lading by a stroke, yet, if by pretending to have legally and honestly got possession of it, he went and got possession of the drums of whisky and he had intended to do that when he adopted the plan of writing the letter, then he would be guilty of a fraud in any event, and he would be guilty of using the mails for fraud, if his intention was formed at the time of writing the letters."

The defendant took no exception to this part of the charge. However, he insists that it was erroneous, because the jury was not in-

structed that in order to render the defendant liable the scheme or artifice should be so "displayed to his intended victim under false representations, false colorings, allurements and embellishments calculated to deceive."

[4] We find nothing in the record to show that this matter was called to the attention of the court while the jury was in the box and before it had retired. However, we think that the scheme as shown by the evidence comes clearly within the terms of the statute, and, furthermore, the proof as to this point is overwhelmingly to the effect that the defendant had a fraudulent design to obtain the property of the shipper by fraudulent pretenses.

[5] The sixth assignment of error is to the effect that the court erred in instructing the jury that they might "infer a previous design to defraud from proof of the fraud; for the reasons (a) that such charge was calculated to withdraw the minds of the jury from the real issue in the case, which was not whether the defendant had committed a fraud, but whether he had devised an artifice or scheme to defraud, such as is contemplated by the statute; and (b) 'the contention of the defendant was that even if a fraud had been committed it was done after the mistake of the shippers had rendered it possible by the alteration of the bills of lading; in neither of which cases could the inference of previous design, that is, that the opening of the correspondence, be properly drawn."

There is nothing in the foregoing that could have misled the jury as to the real issue in this case, and, inasmuch as we have already stated that any plan or scheme with intent to defraud another is a scheme or artifice as contemplated by the section in question, we do not deem it necessary to enter into a further discussion of this point.

It is insisted that even if a fraud was committed it was after the mistake of the shipper had rendered it possible by the alteration of the bill of lading, in neither of which cases could the inference of previous design be drawn from the fact that a fraud had been committed.

It has been repeatedly held that the law "presumes that every man intends the natural and ordinary consequences of his acts," and that, "a wrongful act knowingly or intentionally committed cannot be justified on the ground of innocent intent."

It is also well settled that where there is proof of fraud the jury may infer a previous design to defraud. This phase of the question was fairly presented to the jury by the court below, and the ruling as announced is undoubtedly the law.

This assignment is apparently directed to the second and third counts in the indictment now under consideration, and is untenable inasmuch as it is shown by undisputed testimony that, prior to the mailing of the letters as alleged in those counts, one of the bills of lading had already been altered by the defendant, and upon which a shipment of 10 drums of liquor had been delivered to him, and it further appears that, after failing to secure the other 10 drums of whisky on the bill of lading which he presented, he transmitted the defective bill of lading and secured a duplicate which was for one drum only and by changing this to 10 drums got possession of the remaining 10 drums.

It is shown by undisputed evidence that the defendant transmitted a letter through the mails to the shipper in order to secure a duplicate bill of lading and thus he was enabled to secure the remaining package of liquor. This shows that the defendant in this instance was determined at all hazards to consummate the fraud which he had originally intended, to wit, to secure all the whisky shipped to him at this point without paying for the same. He not only violated the statute in question, but he also rendered himself liable to indictment in the state court on the charge of forgery, and all of these circumstances were properly submitted to the jury as tending to show that he had an intent to defraud.

Under the circumstances, the court gave the defendant the benefit of every instruction to which he was entitled.

[6] It is further insisted by the seventh assignment of error that:

The court erred "in charging the jury that the testimony of the witness was undisputed and admitted, and that the only question for them to decide was as to whether it was sufficient to convict; for the reason that there were issues of fact in such testimony, particularly as to the alleged alterations in the bills of lading and in other respects; and it was the province of the jury to believe such testimony or not as they decided; the defendant not putting up any evidence rendered such testimony neither undisputed nor admitted."

A careful consideration of the charge as respects this assignment fails to show that this assignment is well founded. On this point the court charged the jury as follows:

"In this case the testimony is all one-sided; the defense has interposed no testimony; there is no conflict, therefore, of testimony for you to consider. The only question for the jury is upon the admitted testimony, the undisputed testimony put in by the prosecution alone. If the prosecution have established in your minds by sufficient evidence, conclusions of fact from the testimony, sufficient for you to draw such a conclusion of fact as to justify the inference that this man was guilty, and guilty beyond a reasonable doubt as I have defined it, that is all; no question of balancing contradictory testimony; the only question is as to the sufficiency of the testimony put in by the prosecution to establish in your minds the guilt of this defendant beyond a reasonable doubt. * * *

"So, gentlemen, it is entirely for you to consider whether or not the testimony satisfied you that these letters were written and Charles got possession of those bills of lading, and it was his intention by so wording his order to have one drum sent to get possession of bills of lading that he might obtain from the railroad drums that he was not entitled to unless forged, it is for you to say whether the intention existed before mailing, I charge you that you have a right to infer that it was a device or scheme to defraud. * * *

"Mr. Cothran: I mean we have got a right to dispute every inconsistency, every fact that is testified to by the government witnesses; we don't admit anything.

"Court: I rule that you have no right to dispute any testimony given by the government's witnesses, although you may dispute the inference to be drawn therefrom."

However, there could have been no misunderstanding as to what the court intended to charge the jury after the district attorney directed the court's attention to that portion of the charge as follows:

Mr. Cothran, District Attorney, said:

"We call attention to that part of your honor's charge that the defendant would not be allowed to dispute the testimony; I did not so understand that your honor meant that the jury were not the triers of the credibility of the witnesses."

In response to this the court charged the jury as follows:

"I have already charged the jury that they are the sole judges of the credibility of the witnesses. I say that there is no disputed testimony in this case, and that the jury should give to the witnesses who testified such credibility as by law the ordinary witness of ordinary capacities, ordinary sanity, ordinary reason is entitled to, where his character is not impeached or attacked—his character for veracity; that there has been no attack on the veracity of these witnesses, and they are entitled therefore to be believed by the jury, unless there are other circumstances in the case which, in the opinion of the jury, might impeach their credibility, they stand with their testimony undisputed."

A glance at the foregoing will show that the jury were fully instructed that they were the sole triers of all questions of fact, and that as such they should give such weight as they deemed proper to the testimony of the witnesses in determining the facts necessary to enable them to reach a correct conclusion as to the verdict they should render.

The court also very properly told the jury that the defendant was presumed to be innocent, and that this presumption remained in his favor until there was sufficient testimony offered to convince them that he was guilty beyond a reasonable doubt.

[7] It is insisted by the eighth assignment of error that:

The court erred "in charging the jury that the gravamen of this case is the obtaining of this property fraudulently. The gravamen of the charge was not the fraudulent obtaining of the property, but the design of a scheme or artifice to defraud."

It appears that, in addition to the regular charge, the court made the statement to which this assignment relates in response to an exception that was made by counsel for the defendant while the jury was still in the box.

It would be manifestly unfair, as we have already stated, to take a single statement made by the court, as in this instance, as a basis for determining as to whether the law was correctly stated in the charge when considered as a whole.

The court at the beginning of its charge used the following language, which effectually disposes of this assignment:

"Now gentlemen, we don't sit here to try the primary fraud in this matter. The act under which he is tried is called the Post Office Fraud Act, and was passed for these reasons: This great country has built up an enormous machine called the Post Office Department. * * * The government has therefore determined that this great machine belongs to the people and is for their benefit, is supported by them, and is not to be turned from its beneficial purpose by malicious men, and that evil people are not to use this machine, which was built up for the beneficial purposes of the community, for purposes of fraud, and therefore to inhibit that they have passed the statute which punish people who make use of the mails for the purpose of perpetrating by any scheme or device, any method or plan by which their fellow citizens may be defrauded. It is true that fraud must exist. The question in the case is, that fraud existed, were the mails used for the purpose of fraud? The issues in these two cases are: Were the mails in any way used by this man in pursuance of a device or scheme, or intention to commit fraud by procuring money or property of value from anybody by false pretenses or false representations?"

That it was necessary in order to return a verdict of guilty in this instance that the jury should find as a fact that a fraud was intended at the time the letters were mailed or received from the mails was made perfectly clear by the court below as respects each count in these indictments.

A careful review of the charge as to the law when considered in connection with the evidence bearing upon the same impels us to the conclusion that the rulings of the lower court relative to the questions presented were eminently proper, and that the defendant has had a fair and impartial trial.

Under the circumstances, the judgment of the lower court should be affirmed.

Affirmed.