## TUCKER v. UNITED STATES.

### (Circuit Court of Appeals, Sixth Circuit. July 20, 1915.)

### No. 2600.

**1. POST OFFICE ⬅35—USE OF MAILS TO DEFRAUD—CRIMINAL OFFENSE.**

One devising a scheme to defraud by inducing another to send him jewelry on approval, with intention of converting same to his own use without paying therefor, and using the mails in carrying out the scheme by ordering jewelry, violates Criminal Code (Act March 4, 1909, c. 321) § 215, 35 Stat. 1092 (Comp. St. 1913, § 10385), punishing the use of mails to promote frauds.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig. ⬅35.]

**2. CRIMINAL LAW ⬅1167—APPEAL—HARMLESS ERROR—MISUSE OF MAILS—INDICTMENT— SUFFICIENCY.**

That an indictment charging the use of mails to promote fraud, punishable by Criminal Code, § 215, alleged that the use of the mails was an element of the original scheme to defraud, and that the instructions required the jury so to find before convicting, though the fact charged was not an element of the offense, could not have misled accused to his prejudice.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3101, 3103–3106; Dec. Dig. ⬅1167.]

**3. CRIMINAL LAW ⬅840—MOTION FOR DIRECTED VERDICT—WAIVER.**

An exception to refusal of accused's motion for directed verdict at the close of all the testimony is available, though a similar motion at the close of the government's case is waived by accused introducing evidence.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2021; Dec. Dig. ⬅840.]

**4. CRIMINAL LAW ⬅1159—VERDICT—REVERSAL.**

Where the court on appeal can say that the testimony, taken together, is as consistent with accused's innocence as with his guilt, a conviction must be reversed.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3074–3083; Dec. Dig. ⬅1159.]

**5. POST OFFICE ⬅35—MISUSE OF MAILS—ELEMENTS OF OFFENSE.**

That a scheme to defraud would not have deceived one of ordinary intelligence does not relieve the wrongdoer of liability for using the mails to carry out the deception.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig. ⬅35.]

**6. POST OFFICE ⬅49—MISUSE OF MAILS—EVIDENCE—SUFFICIENCY.**

On a trial for the use of mails to promote fraud, evidence *held* to sustain a conviction.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 84–86; Dec Dig. ⬅49.]

**7. CRIMINAL LAW ⬅369—EVIDENCE—ADMISSIBILITY—OTHER OFFENSES.**

On a trial for the misuse of mails in furtherance of a scheme to defraud, by inducing prosecutor to send to accused jewelry on approval, under the pretense that, if approved, accused would pay for it, but with intent to convert it to his own use, evidence that accused was committed to jail, and remained in jail for about a month, in default of bail, was admissible as bearing on accused's ability to pay, where one of the letters in further-

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ance of the scheme was written while he was in jail, and the other was written after he had furnished bail.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 822–824; Dec. Dig. ☞369.]

8. CRIMINAL LAW ☞369—EVIDENCE—ADMISSIBILITY.

Competent and relevant evidence, tending to establish the guilt of accused of the crime charged, is not incompetent because it may also tend to show his guilt of another offense.

[Ed. Note.—For other cases, see Crimnal Law, Cent. Dig. §§ 822–824; Dec. Dig. ☞369.]

9. CRIMINAL LAW ☞1059—QUESTIONS REVIEWABLE—RULINGS ON EVIDENCE.

Where accused objected to a question put to a witness, but did not state the ground of the objectiou when taking an exception to the overruling thereof, the ruling was not reviewable.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2671; Dec. Dig. ☞1059.]

10. CRIMINAL LAW ☞1044—RULINGS ON EVIDENCE—UNRESPONSIVE ANSWERS —REMEDY.

Where an improper answer is made to a proper question calling for competent testimony, the matter cannot be considered on writ of error, in the absence of criticism presented to the trial judge, by motion to strike out the answer or otherwise.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2672, 2674, 2675; Dec. Dig. ☞1044.]

11. CRIMINAL LAW ☞1169—HARMLESS ERROR—ERRONEOUS RULINGS ON EVIDENCE.

Where, on a trial for the misuse of mails in furtherance of a scheme to defraud, by inducing prosecutor to send goods to accused on approval, while he intended to convert them to his own use, there was competent testimony of the value of the property of accused, and the amount of recorded mortgages thereon was definitely shown, error in permitting a witness to testify that accused's property was mortgaged at as much as the witness considered its value, or more, was not prejudicial where the witness subsequently stated that he did not recall the amount of the mortgage, and had no idea of the value of the property, and claimed to have no knowledge of mortgages, except so far as he found them on record.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 754, 3088, 3130, 3137–3143; Dec. Dig. ☞1169.]

12. CRIMINAL LAW ☞1038, 1059—INSTRUCTION—OBJECTIONS—REVIEW.

Where accused did not present any requested instructions, and did not take any exception to the charge given, except "generally to the charge as given," the instructions were not in the situation presented reviewable on writ of error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2646, 2671; Dec. Dig. ☞1038, 1059.]

13. CRIMINAL LAW ☞878—MISUSE OF MAILS—VERDICT—SEPARATE COUNTS.

Where an indictment charging the misuse of the mails to promote a fraud charged in one count the mailing of a letter on March 6th, in furtherance of the scheme, and in another count charged the mailing of another letter on the preceding February 20th, for like purposes, an acquittal of an intent to defraud by the mailing of the letter of February 20th was not necessarily inconsistent with the existence of a fraudulent intent when the letter of March 6th was mailed, and an acquittal on the second count did not prevent a conviction on the first count.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2098–2101; Dec. Dig. ☞878.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

14. POST OFFICE ⊕═50—MISUSE OF MAILS—TRIAL.

Where, on a trial for the misuse of mails in furtherance of a scheme to defraud prosecutor, by inducing him to send to accused diamonds on approval, it appeared that accused ordered through the mails one diamond for approval, while prosecutor sent two, and that accused converted them, a charge that, if accused devised the scheme to defraud before sending the order, he was guilty, and that it was immaterial whether accused himself wanted both diamonds sent him in the first instance, was not erroneous, for accused's guilt or innocence depended on his intent when the order was mailed and his ability to pay so far as it related to intent concerned only the one diamond ordered.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 87–89; Dec. Dig. ⊕═50.

Nonmailable matter, see notes to Timmons v. United States, 30 C. C. A. 79; McCarthy v. United States, 110 C. C. A. 548.]

In Error to the District Court of the United States for the Eastern District of Kentucky; A. M. J. Cochran, Judge.

Charles T. Tucker was convicted for using the mails to effect a scheme to defraud, and he brings error. Affirmed.

W. M. Shohl, of Cincinnati, Ohio (James H. Polsgrove, of Frankfort, Ky., on the brief), for plaintiff in error.

Thomas D. Slattery, U. S. Atty., of Covington, Ky.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. Plaintiff in error (whom we shall call defendant) was indicted under section 215 of the Criminal Code of the United States for using the mails to effect a scheme to defraud. The defendant, who resided at Frankfort, Ky., on February 20, 1911, ordered from one Gill, a retail dealer in jewelry at St. Louis, Mo. (at which place defendant had formerly lived), a described style of wedding ring. The ring was received, and on March 6th following defendant mailed Gill a check for $8 covering the payment, and in a postscript to the letter of remittance said that, if Gill had a "bargain in 1½ or 2 carat diamond," defendant would like to have Gill send it on approval, stating setting and size. Gill accordingly sent two diamonds, one at a price of $235, the other at $265. Defendant received both rings, but returned neither of them, and made no payment on their account. The gist of defendant's alleged scheme to defraud, as tersely stated by the trial judge in his instructions to the jury was "to induce Gill to send him [defendant] two diamonds on approval, under the pretense that, if he approved them, he would pay for them, but with the intention of converting them to his own use and not to pay for them." The indictment contains two counts, each charging the same scheme to defraud, but differing in this: The first count alleges the mailing of the second letter (March 6th) in furtherance of the fraudulent scheme; the second count charges the mailing of the first letter (February 20th) for the like purpose. At the close of the trial defendant asked an instructed verdict in his favor, which was refused. The jury, under the charge of the court, found defendant guilty under the first count only. Defendant was accordingly

sentenced to imprisonment, and to pay a fine and costs. Reversal is asked upon several grounds.

[1] 1. It is urged that the acts charged do not constitute a crime under article 215 of the Criminal Code; the specific proposition being that the ordering of a diamond ring by mail, with intent not to pay for it, does not amount to a scheme or artifice to defraud under that section of the Code. The case was submitted here at the same session as Bettman v. United States (No. 2740, this day decided) 224 Fed. 819, —— C. C. A. ——, and defendant has had the benefit of the arguments made for plaintiff in error in the Bettman Case. The latter case involved the contention that the Code provision in question did not cover a single case of the obtaining of loans of money through false and fraudulent representations of the borrower's financial condition; and there, as here, it was urged that the statute has no application to the ordinary case of actual or attempted obtaining of money or property by false and fraudulent representations, even though the post office establishment of the United States is employed in the execution of such fraudulent design. In our opinion in the Bettman Case the general proposition referred to is carefully considered and discussed. We there pointed out the all-embracing nature of the statute, and reached the conclusion that the charge in the Bettman Case was within it. That decision logically requires the same conclusion respecting the charge in the instant case, and makes unnecessary here the full discussion perhaps otherwise called for. There are, however, several authorities specially pertinent to the present case (some of which are cited in the Bettman Case) making it additionally clear that the statute applies to transactions such as here charged.

In Evans v. United States, 153 U. S. 584, 592, 14 Sup. Ct. 934, 938 (38 L. Ed. 830), Mr. Justice Brown, in support of the proposition that the action of an officer of a national bank, in procuring a note to be discounted in order to defraud the bank, was within section 5209 of the Revised Statutes (Comp. St. 1913, § 9772), used this pertinent language:

"The case is not unlike that of purchasing goods or obtaining credit. If a person buy goods on credit in good faith, knowing that he is unable to pay for them at the time, but believing that he will be able to pay for them at the maturity of the bill, he is guilty of no offense, even if he be disappointed in making such payment. But if he purchases them, knowing that he will not be able to pay for them, and with an intent to cheat the vendor, this is a plain fraud, and made punishable as such by statutes in many of the states."

In Durland v. United States, 161 U. S. 303, 313, 16 Sup. Ct. 508, 40 L. Ed. 709, Mr. Justice Brewer, in declaring the all-inclusive nature of section 5480 of the Revised Statutes, and in rejecting the contention that a misrepresentation to be within the statute must relate to an existing or a past fact, and cannot consist of a mere intention not to carry out the contract in the future, quoted with approval, and as applicable to the case under discussion the extract from Mr. Justice Brown's opinion in the Evans Case which we have above set out.

In Culp v. United States, 82 Fed. 990, 27 C. C. A. 294, the Circuit Court of Appeals for the Third Circuit, speaking through Judge Acheson, held that a scheme to defraud by sending letters requesting

the persons addressed to sell and ship to defendant articles of merchandise for which he agreed to pay the shippers, but for which in fact he did not intend to pay, was within section 5480. This decision was cited by this court with approval in an opinion by Judge Clark, concurred in by Judges Lurton and Severens. Milby v. United States, 109 Fed. 638, 642, 48 C. C. A. 574. In Charles v. United States, 213 Fed. 707, 711, 712, 130 C. C. A. 221, Ann. Cas. 1914D, 1251, it was held by the Circuit Court of Appeals for the Fourth Circuit, speaking through Judge Pritchard, that the mailing with an order for goods of a check drawn upon a bank in which the sender had no funds, and which he himself did not intend to pay, but intended to defraud the party in whose favor the check was drawn, was within section 215 of the Criminal Code. In both the Culp and Charles Cases the Evans Case was cited. True, in the instant case defendant did not in terms promise to pay for or return the goods, but such promise was plainly open to implication from the request to send the diamonds on approval. It is a familiar principle that false pretenses need not be spoken, but may be acted. 2 Wharton's Criminal Law (11th Ed., 1912) § 1434. The implication of a promise to return or pay for the diamond whose delivery on approval was asked was fully as clear as the implied representation in the Charles Case that the sender had funds in the bank on which the check was drawn, and that he intended thereby to make payment. In Harrison v. United States, 200 Fed. at page 665, 119 C. C. A. 78, it was said by Judge Denison, speaking for this court, that the deception involved in a fraudulent plan to get money or property of others "may, of course, be by implication as well as by express words."

[2] It is immaterial that the indictment charged that the use of the mails was an element of the original scheme to defraud (not necessary under section 215 of the Code—United States v. Young, 232 U. S. 155, 34 Sup. Ct. 303, 58 L. Ed. 548). and that the trial judge made such finding necessary to conviction. Defendant could thereby have been in no way misled to his prejudice. See Sandals v. United States (C. C. A. 6) 213 Fed. 569, 572, 130 C. C. A. 149.

[3, 4] 2. The exception to the refusal of defendant's motion for directed verdict at the close of all the testimony is available, notwithstanding a similar motion at the close of the government's testimony was waived by defendant's introduction of evidence; and if we can say that the testimony, taken together, was as consistent with defendant's innocence as with his guilt it will be our duty to reverse. Harrison v. United States, supra.

[5] Defendant contends that he made no false or fraudulent representations respecting his worthiness for credit or his ability to pay for the diamond asked for, and that the testimony, taken together, was at least as consistent with his innocence as with guilt. We pass by as without merit the suggestion that the deception alleged to have been resorted to would not have deceived a seller of ordinary intelligence. O'Hara v. United States, 129 Fed. at page 555, 64 C. C. A. 81.

[6] The crucial question upon this branch of the case is whether there was evidence from which the jury was justified in finding that

when defendant asked that a diamond be sent him on approval he then intended to convert it to his own use without paying for it. The diamonds were sent by express, accompanied by a memorandum that they remained Gill's property until regular bill should be rendered. There was testimony tending to show that defendant was unable to buy and pay for the diamonds; that his visible property (the contents of a pool and billiard room) was mortgaged, and that he owed all or substantially all the property was worth; that he failed to answer the first two or three letters from Gill asking the return of the diamonds, finally promising to pay for them by April 15th. No remittance, however, was sent. There was testimony that Gill finally went to Frankfort to look after his diamonds, and was there told by defendant that he could do nothing about them, and that defendant's reason for such statement was none of Gill's business; that Gill then employed an attorney to recover the diamonds or payment for them; that defendant refused to return the diamonds on the attorney's demand, saying that they were pawned, that it would take $300 to get them back, and that he could not then pay for them, refusing to tell with whom or where they were in pawn, but agreeing to get them if $300 were paid over to him. It also appeared that four days after defendant acknowledged receipt of the diamonds he executed a mortgage on the pool and billiard room property mentioned to his sister-in-law for $1,000; defendant retaining the mortgage six weeks thereafter before recording it.

Defendant testified that he was able to pay for the diamond described in his letter of March 6th; that he had no thought of getting anything from Gill that he could not pay for or without paying for it; that he was expecting to sell his business and to get about $1,000 in cash therefrom, above the mortgages thereon (which apparently did not include the mortgage to the sister-in-law later given). He denied the alleged interview with Gill (asserting that he was too ill to see the latter when he first visited Frankfort), but admitted telling Gill's attorney that the diamonds were pawned for $300, and that he might consider an offer of $300. He claimed, however, not to have intended to accept any money, but to have been provoked, and to have made up his mind to keep the diamonds and pay for them, and claimed to have had at the time money enough in his pocket to pay for the diamond described in his letter of March 6th; that he was delayed and disappointed in selling his business, and there seems a possible intimation in his testimony that his alleged anxiety to keep the diamonds was caused by a statement, claimed by him to have been made by Gill on a second visit, that "the large diamond was worth a great deal more than the amount he had charged for it," and that defendant thus saw an opportunity for considerable profit in keeping both. He claims he would have paid Gill, but for the fact that the latter had him arrested upon a state court process for conversion.

Defendant's testimony was not necessarily conclusive either of his ability to pay or of honesty of intention. The case depended largely upon his personal credibility. The diamonds were not produced, defendant testifying that he sent them to the sister-in-law mentioned

(at St. Louis), with instructions to have them weighed and learn their value, and he would then "advise her of the disposition of them." The sister-in-law testified to receiving a box by express (a box at least was sent), but that it contained nothing when it reached her, and there is no direct evidence that the box had been tampered with. It is the government's contention that defendant did not express the diamonds to St. Louis, but only pretended to do so in order to conceal their whereabouts. The testimony left room for this theory.

We have not attempted to set out all the testimony in the case, but only enough to show that it presented a question of fact for the jury respecting defendant's intent in asking that the diamond be sent on approval. Defendant's conduct after he received the diamonds is naturally relied upon to a considerable extent by the government as indicating an intent to defraud Gill; but in view of all the testimony in the case, and the fact that the District Judge, who saw and heard all the witnesses, including defendant, refused the motion for a new trial, one of whose grounds was the denial of motion to direct verdict, we cannot say, as matter of law, that the jury was not justified in finding beyond a reasonable doubt that the alleged intent to defraud existed at the time the letter of March 6th was mailed. The motion to direct verdict for defendant was thus properly overruled.

[7] 3. The government introduced evidence from the court records that defendant was committed to jail on January 23, 1911, upon bench warrant issued upon indictment (the charge does not appear, nor what became of it), and was discharged February 25th thereafter on giving bond. It is inferable from defendant's testimony that he was committed in default of $2,400 bail, and that the delay in procuring release was due to difficulty, or at least inconvenience, in readily getting bondsmen. The admission of this evidence is assailed as violating the well-settled rule which (subject to exceptions not here important) forbids proof that a defendant in a criminal case has committed other offenses having no relation to the offense charged. The testimony was not objected to when offered. After defendant's counsel had shown upon cross-examination that the release was upon bond, plaintiff's counsel said he thought it proper to explain that the testimony was not offered as affecting defendant's character, but simply his ability to pay. Counsel for defendant thereupon said "he so understood." The court then upon its own motion instructed the jury that the sole object of the testimony was not as affecting defendant's character in any particular, but as bearing upon his ability to pay for the diamonds. "That is the only relevancy of that fact." Defendant then moved to exclude the testimony for all purposes, reserving exception to the overruling of the motion.

[8] Defendant urges that the criticized testimony had no tendency to show defendant's inability to pay for the diamond in question. While it is not strongly persuasive on that point, we are not prepared to say that it had no tendency in that direction, especially when considered in connection with the other testimony in the case to which we have referred, and its nearness in point of time to the ordering of the ring in question. (The letter of February 20th, ordering the wed-

ding ring, was written while defendant was in jail.) Defendant explains his delay in giving bail by saying that he was practically a stranger in Frankfort and could not "expect anybody to go on my bond." According to his testimony, however, he must have been a resident of Frankfort for about four years and was then in business at that place. If competent and relevant as tending to establish guilt of the crime charged, it is not incompetent because it may also tend to show defendant guilty of another offense. Jones v. United States (C. C. A. 9) 179 Fed. 584, 604, 103 C. C. A. 142; State v. Adams, 20 Kan. 311, 319 (opinion by Mr. Justice Brewer). Taking the record together, we are not convinced that the testimony was offered in bad faith, and are of opinion that reversible error was not committed in its admission.

[9, 10] 4. By way of proving defendant's inability to pay for the diamond ring (presumably as bearing upon his intention to pay), the government showed, by the attorney who represented Gill in his attempt to get the rings from defendant or the pay for them, that before he saw defendant he looked into the latter's financial standing and ability to pay "so far as visible property was concerned;" and in answer to the question, "What was the result of these investigations?" said he found that the only property defendant had in Frankfort was "the pool room, pool tables and billiard tables and furniture," all stored in a place stated, adding "and that was mortgaged at as much as I considered its value, or more." The criticism is that the ultimate question of defendant's financial ability was for the jury; also that, if opinions were proper, the witness was not shown to be qualified "as an expert on the values of the property involved." The question itself was proper, and admitted of a competent and material answer, although defendant is not entitled, as of right, to raise even that question here; for the record shows only that, following the putting of the question above quoted, "defendant objects" to it, but the ground of the objection is not stated and no exception is taken to its overruling. Pennsylvania Co. v. Whitney (C. C. A. 6) 169 Fed. 572, 575, 577, 95 C. C. A. 70; Robinson v. Van Hooser (C. C. A. 6) 196 Fed. 620, 624, 116 C. C. A. 294.

[11] The only criticism, if any, which could be made is to the witness' opinion contained in the last clause of his answer; but no criticism of this opinion was presented to the trial judge by way of motion to strike out the answer or otherwise, and defendant is thus not entitled to have the question considered here. We may add that defendant has apparently not been substantially prejudiced by the opinion, for the witness stated on cross-examination that he did not recall the amount of the mortgages upon the property and that he had no idea of the value of the property and fixtures. The gist of the basis of his conclusion seemed to be that "at the time I inquired the value of the property from people in that business, and it seemed to me it was mortgaged for more than it was worth." There was, however, testimony of the value of the property from other sources, and the amount of the mortgages of record was definitely shown, and the witness claimed to have no knowledge of mortgages except so far as he found them on record.

[12-14] 5. The jury was instructed that, if they found that defendant devised the alleged scheme to defraud "before the first letter was written, then you would have to find the defendant guilty on both counts. If, however, you should determine that the scheme to defraud was not devised before the first letter was written, but was devised after the first letter was written, and before the second letter —the letter of March 6th—was written, then you should find him guilty only under the first count"; also "as to Tucker's ordering two diamonds, or inducing Gill to send him two diamonds, by his letter of March 6th, it is claimed that Tucker did not expect him to send but one, and that Gill sent him two, so that he might choose between them. The charge in the indictment is answered by the fact that he induced him to send him one; so it is immaterial whether Tucker himself wanted both diamonds sent him in the first instance." The paragraph first quoted is criticized on the ground that defendant could not be convicted unless the fraudulent scheme was devised before the first letter (of February 20th) was mailed. The criticism upon the second paragraph is that, as defendant's intent when the diamond was actually ordered is alone material, his ability or inability to pay must be limited to the one diamond asked for, and that the fact that defendant might be better able to pay for one diamond than for two was not clearly brought to the jury's attention.

Defendant, however, presented no request to charge (except the motion to direct verdict in his favor), and took no exception to the charge except "generally to the charge as given," which is not a sufficient exception to a charge containing any correct proposition. Pennsylvania Co. v. Whitney (C. C. A. 6) 169 Fed. 572, 577, 95 C. C. A. 70, and cases there cited; P., C., C. & St. L. Ry. Co. v. Scherer (C. C. A. 6) 205 Fed. 356, 359, 123 C. C. A. 484. We are asked to exercise the authority existing in criminal cases to consider, in the absence of objection and exception, a case where plain error has been committed in a matter vital to defendant. Wiborg v. United States, 163 U. S. 632, 658, 16 Sup. Ct. 1127, 1197, 41 L. Ed. 289; Clyatt v. United States, 197 U. S. 207, 221, 25 Sup. Ct. 429, 49 L. Ed. 726; Crawford v. United States, 212 U. S. 183, 194, 29 Sup. Ct. 260, 53 L. Ed. 465, 15 Ann. Cas. 392; Morse v. United States (C. C. A. 2) 174 Fed. 539, 544, 98 C. C. A. 321. We do not think such situation is presented.

The fact, however, that the jury acquitted defendant of an intent to defraud when the letter of February 20th was sent, is not necessarily inconsistent with the existence of such intent when the later letter of March 6th was mailed; and the *charge in the indictment* would be satisfied by the use of the mails to further a scheme to obtain one diamond, notwithstanding two were sent. Of course, defendant's guilt or innocence depends upon his intent when the letter of March 6th was mailed, and his ability to pay, so far as it relates to such intent, concerns only the diamond ordered; but we see nothing in the charge inconsistent with this proposition. We find nothing in the charge reasonably prejudicial to defendant's rights.

So far as any criticism may have been intended to be made upon the action of the government's counsel in calling upon defendant for the originals of certain letters, we content ourselves with saying that

we think the subject-matter is, upon the record presented, entirely without merit.

We find no error in the record, and the judgment of the District Court is affirmed.