### SCHEINBERG v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. April 7, 1914.)

#### No. 66.

1. Post Office (§ 35*)—Misuse of Mails—Scheme to Defraud—Statute—Scope—"Scheme or Artifice."

Criminal Code, § 215 (Act March 4, 1909, c. 321, 35 Stat. 1130 [U. S. Comp. St. Supp. 1911, p. 1653]), provides that whoever, having devised or intended to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, etc., shall for the purpose of executing such scheme or artifice, or attempting to do so, place or cause to be placed any letter, etc., in any post office to be sent or delivered by the post office establishment of the United States, shall be fined, etc. Held, that the use of the words "scheme or artifice" to defraud did not limit the offense to a predetermined plan or contrivance to mislead or seduce the public into parting with their money or property similar to several swindles expressly designated in the statute, but prohibited the

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

use of the mails for the transmission of a false financial statement by defendant to commercial agencies with intent that the same should be used as a basis for the purchase of goods by defendant on credit to which he was not entitled.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig. § 35.*]

2. POST OFFICE (§ 49*)—MISUSE OF MAILS—SCHEME TO DEFRAUD—INTENT.

Where defendant mailed a false financial statement to a commercial agency with knowledge that it was false, and that it would be used as a basis for the sale of goods to him on credit, such proof was sufficient to warrant a finding that the statement was sent through the mails to execute a scheme to defraud in violation of Criminal Code, § 215 (Act March 4, 1909, c. 321, 35 Stat. 1130 [U. S. Comp. St. Supp. 1911, p. 1653]).

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 84–86; Dec. Dig. § 49.*]

3. POST OFFICE (§ 49*)—MISUSE OF MAILS—SCHEME TO DEFRAUD—OTHER OFFENSES.

In a prosecution for using the post office in furtherance of a scheme to defraud, in violation of Criminal Code, § 215 (Act March 4, 1909, c. 321, 35 Stat. 1130 [U. S. Comp. St. Supp. 1911, p. 1653]), evidence of other offenses having no relation to the offense charged, but indicating that defendant was not averse to fraudulent methods in business, was inadmissible to show intent.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 84–86; Dec. Dig. § 49.*

Nonmailable matter, see notes to Timmons v. United States, 30 C. C. A. 79; McCarthy v. United States, 110 C. C. A. 548.]

In Error to the District Court of the United States for the Southern District of New York.

This cause comes here upon writ of error to review a judgment of the District Court, Southern District of New York, convicting the plaintiff in error on the first count of an indictment charging him in four counts with violations of section 215 of the United States Criminal Code in causing writings to be placed in the post office for the purpose of executing a scheme or artifice to defraud by obtaining property by means of false and fraudulent pretenses and representations.

W. Rand, Jr., of New York City, for plaintiff in error.

H. Harper, Asst. U. S. Atty., of New York City.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The indictment charged: That defendant was in business with his brother, as jobbers in woolen goods. That he devised a scheme and artifice to defraud divers persons then engaged in selling woolen goods at wholesale. That the object of the scheme was to induce the persons intended to be defrauded to sell and deliver on credit to defendants certain woolen goods. That for the purpose of securing the extension of such credit and the obtaining of said property it was part of the scheme that defendant should knowingly and willfully make divers false and fraudulent representations concerning the business and financial condition of the firm. That these false representations were made to three different mercantile agencies (naming them), in order that the agencies might communicate said statements to the persons intended to be defrauded. Details of the false

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

statements are set forth in the indictment, but need not be quoted. That on January 7, 1910, defendant willfully and feloniously for the purpose of executing said scheme and artifice, and attempting to do so, placed or caused to be placed in the mail a certain writing addressed to Woods Dry Goods agency. The writing was a statement of assets and liabilities alleged to be false. A second count charged the mailing on May 10, 1910, of a similar writing to R. G. Dun & Co. A third count charged the mailing on August 23, 1910, of a similar writing to M. D. Howell & Co. A fourth count charged the mailing on September 16, 1910, of a similar writing to Lewis & Co. At the close of the government's case the fourth count was abandoned. The jury found defendant not guilty under the second and third counts. There was a verdict of guilty, with recommendation to mercy on the first count, and to review the judgment thereon this writ of error was taken.

[1, 2] As will be seen from the above epitome of the indictment the case was a simple one. Defendant was not charged with having obtained property on false pretenses; such an offense is not one with which the federal government is concerned. What goods he may have obtained on credit as a result of the written statements and what he may have done with those goods are immaterial matters. The offense charged is, under section 215 of the Criminal Code, the mailing of the written statement for the purpose of executing the alleged scheme to defraud. As to the alleged scheme itself, manifestly a written statement showing the firm to be abundantly solvent would tend to induce the extension of credit to it. Manifestly the sending of such a statement to a commercial agency, or to a person from whom defendant's firm was seeking to buy goods itself, proved the purpose of its sending. If the statement were proved to be false and it were also proved that the defendant knew it to be false when he mailed it, there was sufficient to warrant the finding that the statement was sent for the purpose of executing a scheme to defraud.

The first proposition submitted on behalf of the plaintiff in error is that the testimony does not establish "a scheme or artifice" to defraud within the terms of the statute. His brief thus stated the facts, to which the government introduced evidence and which it asked the jury to find.

"Responding to a request by a mercantile agency, defendant, a member of a firm of woolen jobbers, mailed to the agency a statement purporting to show the financial condition of his firm. This statement was false to defendant's knowledge, in that it grossly exaggerated the firm's assets and understated its liabilities. From previous experience, being himself a subscriber to the agency, defendant knew that the request for the statement was made because some other subscriber of whom he wished to buy merchandise had made inquiry as to the firm's credit; and in sending the false statement he intended to obtain, from that subscriber and from other subscribers to whom the contents of the statement might be communicated, credit for merchandise purchased which would not have been extended had the true state of the firm's finances been disclosed, and thus to commit fraud."

The court charged that if the jury were satisfied that these were the facts they might find him guilty of the offense charged. Such charge is assigned as error.

The contention is that the statute, by its use of the words "scheme and artifice" to defraud, was directed against something more than a single transaction, or even a series of single transactions, provided they are not part of a common plan or purpose, that Congress had in mind the fleecing of ignorant or gullible people, not by an isolated fraudulent transaction, or even by a series of them, but by the execution of a predetermined plan or contrivance to mislead and seduce them into parting with their money or property, and that on the principle of noscitur a sociis such intent is evidenced by the specific schemes set forth in the statute, viz., the "sawdust swindle," the dealing in "green goods," etc. It is urged that the statute was not intended to invest the federal government with the duty and power to punish frauds by debtors upon creditors in every case in which the debtor has, in carrying out his fraud, mailed a single letter to the creditor; the contents of such letter being devised to carry out the fraud. No doubt such a construction of the statute goes far beyond its scope when originally enacted, and apparently bids fair enormously to increase the business of the federal criminal courts. But the old statute (section 5480, U. S. Rev. Stat.) has been many times amended, and in its latest form, as found in section 215, U. S. Criminal Code, it has undoubtedly been broadened very much. Section 5480 provided that the "scheme or artifice" must be one which, as originally planned, contemplated that it was to "be effected * * * by means of the post office establishment of the United States." It further provided that in sentencing a convicted defendant the court should "proportion the punishment especially to the degree in which the abuse of the post office establishment *enters as an instrument into* such fraudulent scheme and device." Under that section, if the scheme did not contemplate the use of the mails, if it were carefully planned so as to avoid their use, contemplating that all written or printed communications should be sent by express or delivered by hand, it might not be brought within the statute by reason of the circumstance that on one particular occasion the defendant incautiously mailed a single letter in furtherance of his scheme. But the section has been radically changed; the provisions above quoted, indicating that the scheme must contemplate the use of the mails to effect its purpose, have been cut out. The acts charged and proved are within the text of the act as it now stands, and it is fairly to be inferred that Congress intended that the act should have this broader scope. This is the construction which has been given to section 215 by the Supreme Court in U. S. v. Young, 232 U. S. 155, 34 Sup. Ct. 303, 58 L. Ed. —— (January 26, 1914). The assignments of error covering this part of the cause are without merit.

[3] The record in this case is voluminous; it was tried shortly before the decision of this court in Marshal v. U. S., 197 Fed. 511, 117 C. C. A. 65. Evidence of other offenses was admitted over objection and exception, and, since we cannot be sure that such evidence did not prejudice the jury against the defendant, there must be a reversal. It is sufficient to refer to the following instances:

1. Hyman Baron was a woolen jobber of Philadelphia. There was no evidence that he ever received a financial statement—false or true—

from defendant's firm, or that he ever sold them goods on credit. On June 17, 1910, he was in defendant's store and bought from one of the Scheinbergs (he could not remember whether or not it was defendant, but thinks defendant was in the store) some goods for $400. The person with whom he dealt promised that the goods would be packed and sent at once to Philadelphia, and Baron gave two notes for them. The goods did not come; correspondence followed, the firm writing that the goods had been shipped. Baron testified that he went to the store and was told by one of the Scheinbergs that they were suing the railroad; that he asked to have his notes returned, and was told that the person he was talking with could not open the safe, not knowing the combination; that three or four weeks later he called again, and was told that one of the brothers had gone to Philadelphia, carrying the notes with him, and would deliver them to Baron there. No one came to Baron's place in Philadelphia, the notes were never returned to him and a week later the firm failed. If the jury believed that the Scheinberg with whom Baron had these transactions was the defendant, the circumstance was calculated to prejudice him. We cannot see, however, that these transactions had any relation to the offense charged in the indictment, which was a scheme to obtain credit, not to sell goods and fail to deliver them.

2. Defendant, wishing to obtain credit from the concern of W. Stroosberg, applied on September 12, 1910, to its credit man, who said to him that he had heard reports regarding the connection of defendant's firm with the failure of his brother Moses Scheinberg, and asked how that was. The witness testified that defendant replied that his firm "had no connection with the brother at all at any time, before or after the failure, and that they were not interested in the failure in any way whatsoever," furthermore that they "had no dealings with him, were not on speaking terms with him, and that they had ostracized him from the family." This evidence was admitted on the district attorney's promise to show that the defendant was "connected with Moses Scheinberg in business." He wholly failed to show this, although it appeared that after his bankruptcy Moses was employed by defendant's firm as salesman, and that defendant had paid a stenographer's bill of about $200 incurred by Moses in connection with his bankruptcy. All that this amounted to was that apparently defendant's exaggerated statement as to his brother's ostracism was a gratuitous falsehood; to the specific question put to him by the credit man he did not reply falsely. The testimony, not being connected as promised, should have been stricken out. We do not find in the voluminous record any motion to strike out after the failure to connect became apparent. It was for the defendant to make such a motion; it is no part of the duty of the judge presiding at a long trial to keep track of all the items of testimony, which he may admit on promise so to connect it with other testimony as to make it proper, in order himself to discover whether or not such connection has been made. Although technically defendant may not be in a position to assert that it was error to admit this testimony about Moses Scheinberg, attention is called to it

here, because by doing so possibly its presentation at the new trial may be avoided.

3. Evidence was introduced to show that late in September, 1910, defendant's brother sold two bills of goods and received therefor two checks of the purchaser to the order of defendant's firm. These checks were indorsed with the firm name impressed from a rubber stamp, were deposited in bank to the firm's credit, and were collected; but apparently the transactions were not entered in the books.

There is no evidence to show that defendant knew of these sales, or of the checks, or what entries were or were not made in the books. Moreover, if he did know of these things in September, 1910, when they took place, it is not perceived what bearing that would have on the issues in the case. The testimony does not tend to show that defendant mailed the statement to the commercial agency in January, 1910, on which he was convicted, or indeed that he mailed any other statement. Nor does it tend to show that the statement so made seven months before was false, nor that defendant knew it was false when he mailed it. Much is made in argument as to proving defendant's intent and purpose in mailing the statement. Surely something may be left to the common sense of a jury, who are not likely to be misled as to the purpose and intent with which a business man sends a statement of his assets and liabilities to a commercial agency by any sworn testimony of his that it was *not* for the purpose of securing the degree of credit which the statement might reasonably call for. When it is proved that a defendant did send such a statement, that the statement was false, showing an insolvent concern to be abundantly solvent, and that he knew the statement to be false when he sent it, it is a waste of time to undertake to introduce other testimony to prove that he intended to avail of the false statement as a means to defraud somebody.

The only possible effect of testimony such as that above set forth as to falsification of books shortly before bankruptcy, etc., is to create an atmosphere, to impress the jury with the belief that defendant is a bad man. But, as we held in the Marshal Case, that cannot be done by showing that he has committed offenses, unrelated to the subject-matter of the indictment, and which he was not summoned into court to meet.

There are many other similar errors assigned, but they need not be considered; probably the record on the new trial will be materially different from the one now before us.

The judgment is reversed.