### UNITED STATES v. AKERS.

(District Court, N. D. Georgia. April 21, 1916.)

No. 1159.

Post Office  35—Using Mails to Defraud—Elements of Offense.

 A scheme or artifice to defraud, or to obtain property by false pretenses, to be carried out by the use of the mails, within Criminal Code (Act

March 4, 1909, c. 321) § 215, 35 Stat. 1130 (Comp. St. 1913, § 10385), may consist of the making of false pretenses as to solvency and the doing of a legitimate business for the purpose of obtaining property of others on credit without intending to pay for the same.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig. ☞35.

For other definitions, see Words and Phrases, First and Second Series, Scheme.]

Criminal prosecution by the United States against Simon A. Akers. On demurrer to indictment. Overruled.

Certain counts of the indictment are as follows:

United States of America, Northern Division, Northern District of Georgia.

In the District Court of the United States, in and for the division and district aforesaid, at the October term thereof, A. D. 1914, the grand jurors of the United States, impaneled, sworn and charged at the term aforesaid of the court aforesaid, on their oath present that Simon A. Akers, on the 10th day of March in the year of our Lord 1913, in the said division and district, and within the jurisdiction of said court, had theretofore devised a scheme and artifice to defraud each of the following persons, to wit: John Compton, W. E. Hooks, S. J. McLendon, and A. F. Windham Lumber Company, and other persons to the grand jurors aforesaid unknown, and for obtaining property from each of said persons by means of false and fraudulent pretenses and representations, which said scheme and artifice was and is in substance and to the effect as follows:

That the said Simon A. Akers, acting and doing business under the name and style of "Atlantic Lumber & Coal Company," would falsely pretend to be a responsible and reliable association of persons doing business in the city of Atlanta under the name and style aforesaid, as dealers in yellow pine and hardwood lumber, steam and domestic coal, and that he would use a business letter head so indicating, and would send letters through the mails bearing such letter head to the said John Compton, W. E. Hooks, S. J. McLendon, A. F. Windham Lumber Company, and other persons doing a sawmill business, and would induce and cause the said John Compton, W. E. Hooks, S. J. McLendon, A. F. Windham Lumber Company, and other persons to the grand jurors aforesaid unknown, to ship large quantities of lumber in carload lots consigned to the said "Atlantic Lumber and Coal Company" at Atlanta, Ga., without the purchase money therefor first having been paid, under the belief, superinduced by the said Simon A. Akers, that the said so-called "Atlantic Lumber and Coal Company" was a bona fide business association of persons financially good, solvent, reliable, and responsible; whereas in truth and fact the said so-called "Atlantic Lumber and Coal Company" was not a bona fide business association of persons, and was not financially good, solvent, reliable, and responsible, and did not do a bona fide business as dealers in yellow pine and hardwood lumber, steam and domestic coal, all of which the said Simon A. Akers then and there well knew.

And it was the intent and purpose of the said Simon A. Akers, as a part of said scheme and artifice, to induce and cause the said John Compton to ship a carload of lumber, to wit, 9,270 feet of lumber, of the net value of $102, from Chauncey, Ga., consigned to the said "Atlantic Lumber and Coal Company," Atlanta, Ga., and that he, the said Simon A. Akers, would take said lumber so shipped into his custody and control, after the arrival thereof at destination at Atlanta, convert the said lumber and the proceeds arising from the sale thereof to his own use and benefit, and not pay the said John Compton for the same, nor give to him anything of value in return therefor; it being the intent and purpose of the said Simon A. Akers to injure and defraud the said John Compton in the sum of $102, by means of such scheme and artifice.

And it was also the intent and purpose of the said Simon A. Akers, as a part of said scheme and artifice, to induce and cause the said W. E. Hooks to ship a carload of lumber, to wit, 15,152 feet of lumber, of the value of $144, from Woodbury, Ga., consigned to said "Atlantic Lumber & Coal Company,"

Atlanta, Ga., and that the said Simon A. Akers would take said lumber so shipped into his custody and control upon its arrival at destination at Atlanta, convert the said lumber and proceeds arising from the sale thereof to his own use and benefit, and not pay the said W. E. Hooks for the same, nor give him anything of value in return therefor, but intending by means of said scheme and artifice to injure and defraud the said W. E. Hooks in the said sum and value of $144.

And it was also the intent and purpose of the said Simon A. Akers, as a part of said scheme and artifice, to induce and cause the said S. J. McLendon to ship two carloads of lumber, to wit, 18,000 feet of lumber, of the value of $207, consigned to the said "Atlantic Lumber & Coal Company," Atlanta, Ga., and that the said Simon A. Akers would take the said lumber so shipped into his custody and control upon its arrival at destination at Atlanta, and convert the said lumber and proceeds arising from the sale thereof to his own use and benefit, and not pay the said S. J. McLendon for same, nor give to him anything of value in return therefor, but intending by means of said scheme and artifice to injure and defraud the said S. J. McLendon in the said sum and value of $207.

"And it was also the intent and purpose of the said Simon A. Akers, as a part of said scheme and artifice, to induce and cause the said F. A. Windham Lumber Company to ship four carloads of lumber, to wit, 43,148 feet of lumber, of the value of $385, from Daleville, Ala., consigned to the said "Atlantic Lumber & Coal Company," Atlanta, Ga., and that the said Simon A. Akers would take said lumber so shipped into his custody and control upon its arrival at destination at Atlanta, convert the said lumber and proceeds arising from the sale thereof to his own use and benefit, and not pay the said F. A. Windham Lumber Company, nor give the said company anything of value in return therefor, but intending by means of said scheme and artifice to injure and defraud the said F. A. Windham Lumber Company in said sum and value of $385.

And the said Simon A. Akers, in and for the purpose of executing the said scheme, and in and for the purpose of attempting so to do, on the 10th day of March in the year of our Lord 1913, in said division and district, and within the jurisdiction of said court, with intent to defraud the said John Compton, did then and there unlawfully, knowingly, and fraudulently place and cause to be placed in the post office of the United States at Atlanta, in the state of Georgia, a certain letter inclosed in an envelope with the postage prepaid thereon, and directed to Mr. John Compton, Chauncey, Ga., to be sent by the post office establishment of the United States, which said letter was and is as follows, to wit:

"All agreements contingent on strikes, accidents, delays of carriers, or other causes unavoidable and beyond our control.

"P. O. Box 76.                                              Telephone Connection.

"Atlantic Lumber & Coal Company,

"Yellow Pine and Hardwood Lumber, Steam and Domestic Coal.

"309 Fourth Natl. Bk. Bldg.

"Atlanta, Ga., March 10th, '13.

"Mr. John Compton, Chauncey, Ga.—Dear Sir: Please quote us the following stock f. o. b. mill or delivered Atlanta for shipment in 5 to 15 days:

1 car #1 shingles
1 " #2 "
4 " Framing, 2 x 4, 6, 8, 10 to 24 ft.
1 " B & B tr. flooring, 1 x 4.
1 " Com. #2 " "
2 " Cull " "

"If you cannot ship in time specified, advise how soon you can ship. Also furnish stock sheet and price list on all hardwood you have to offer.

"Yours very truly,

"A–G                                        Atlantic Lumber & Coal Company,
                                             "[Signed] S. A. Akers, Mgr."

Contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America.

## Second Count.

And the grand jurors aforesaid, on their oath aforesaid, do further present that the said Simon A. Akers, on the 17th day of May in the year of our Lord 1913, in the said division and district, and within the jurisdiction of said court, had theretofore devised a scheme and artifice to defraud John Compton, and for obtaining property, to wit, a carload of lumber, of the value of $102, from the said John Compton, by means of false and fraudulent pretenses and representations, which said scheme and artifice is more fully set forth in the first count of this indictment, and the same is now referred to and made a part hereof.

And the said Simon A. Akers, in and for the purpose of executing said scheme and artifice, and in and for the purpose of attempting so to do, on the 17th day of May in the year of our Lord 1913, in said division and district, and within the jurisdiction of said court, did then and there unlawfully, knowingly, and fraudulently place and cause to be placed in the post office of the United States at Atlanta, in the state of Georgia, a certain letter inclosed in an envelope with postage prepaid thereon, and directed to Mr. John Compton, Chauncey, Ga., to be sent by the post office establishment of the United States, which said letter was and is as follows, to wit:

"All agreements contingent on strikes, accidents, delays of carriers, or other causes unavoidable or beyond our control.

"P. O. Box 76.                                    Telephone Connection,

"Atlantic Lumber & Coal Company,

"Yellow Pine and Hardwood Lumber, Steam and Domestic Coal,

"309 Fourth Natl. Bk. Bldg.

"Atlanta, Ga., May 17th, '13.

"Mr. John Compton, Chauncey, Ga.—Dear Sir: We wrote you recently in regard to rough and dressed lumber we were in the market for and as yet have not received any reply.

"We have now about completed our wants except what we list below. If you have any of the stock, we will be pleased to hear from you.

3 cars 2x4 10 ft. long rough.
2  "    2x8 14 "    "      "
3  "    1x6 to 12 boards "

"Quote all or any part of this stock.

"Yours very truly,

"A–G ·                         Atlantic Lumber & Coal Company,
                              "[Signed]  S. A. Akers, Mgr."

Contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America.

## Third Count.

And the grand jurors aforesaid, on their oath aforesaid, do further present that the said Simon A. Akers, on the 30th day of May in the year of our Lord 1913, in said division and district, and within the jurisdiction of said court, had theretofore devised a scheme and artifice to defraud John Compton, and for obtaining property, to wit, a carload of lumber, of the value of $102, from the said John Compton, by means of false and fraudulent pretenses and representations, which said scheme and artifice is more fully set forth in the first count of this indictment, and the same is now referred to and made a part hereof.

And the said Simon A. Akers, in and for the purpose of executing said scheme, and in and for the purpose of attempting so to do, on the 30th day of May in the year of our Lord 1913, in the said division and district, and within the jurisdiction of said court, did then and there unlawfully and knowingly place and cause to be placed in the post office of the United States at Atlanta, in the state of Georgia, a certain letter inclosed in an envelope with the

postage prepaid thereon, and directed to Mr. John Compton, Chauncey, Ga., to be sent by the post. office establishment of the United States, which said letter was and is as follows, to wit:

"All agreements contingent on strikes, accidents, delays of carriers, or other causes unavoidable or beyond our control.

"P. O. Box 76.                                                    Telephone Connection.

"Atlantic Lumber & Coal Company,

"Yellow Pine and Hardwood Lumber, Steam and Domestic Coal,

"309 Fourth Natl. Bk. Bldg.

"Atlanta, Ga., May 30th, '13.

"Mr. John Compton, Chauncey, Ga.—Dear Sir: In answer to your letter of May 26th, we beg to advise that you can ship us the 1x6 to 12—12 ft. and up long, 2x6 to 12—12 ft. and up long, and 2x4 and 4x4 random lengths. In regard to the 3x4 and 5x9, if you put these on we will have to reduce them to 2x4 and 4x8, as we do not handle any odd dimension stock and the people that we sell them to would reduce them to the next lowest dimension.

"Please advise by return mail how soon we can expect shipment.

"Yours very truly,

"A–G                                         Atlantic Lumber & Coal Company,
                                              "[Signed]   S. A. Akers, Mgr."

Contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America.

### Fourth Count.

And the grand jurors aforesaid, on their oath aforesaid, do further present that the said Simon A. Akers, on the 5th day of June in the year of our Lord 1913, in said division and district, and within the jurisdiction of said court, had theretofore devised a scheme and artifice to defraud John Compton, and for obtaining property, to wit, a carload of lumber, of the value of $102, from the said John Compton, by means of false and fraudulent pretenses and representations, which said scheme and artifice is more fully set forth in the first count of this indictment, and the same is now referred to and made a part hereof.

And the said Simon A. Akers, in and for the execution of said scheme and artifice, and in and for the purpose of attempting so to do, on the 5th day of June, in the year of our Lord 1913, in the said division and district, and within the jurisdiction of said court, did then and there unlawfully and knowingly place and cause to be placed in the post office of the United States at Atlanta, in the state of Georgia, a certain letter inclosed in an envelope with the postage prepaid thereon, and directed by the post office establishment of the United States, to be sent by the post office establishment of the United States, which said letter was and is as follows, to wit:

"All agreements contingent on strikes, accidents, delays of carriers, or other causes unavoidable or beyond our control.

"P. O. Box 76.                                                    Telephone Connection.

"Atlantic Lumber & Coal Company,

"Yellow Pine and Hardwood Lumber, Steam and Domestic Coal,

"309 Fourth Natl. Bk. Bldg.

"Atlanta, Ga., June 5th, '13.

"Mr. John Compton, Chauncey, Ga.—Dear Sir: We have your letter of June 2d, and beg to advise that we note you will ship our lumber as soon as you can get car placed.

"Yours very truly,

"A–G                                         Atlantic Lumber & Coal Company
                                              "[Signed]   S. A. Akers, Mgr."

Contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America.

### ·Fifth Count.

And the grand jurors aforesaid, on their oath aforesaid, do further present that the said Simon A. Akers, on the 30th day of June in the year of our Lord 1913, in the said division and district, and within the jurisdiction of said court, had theretofore devised a scheme and artifice to defraud John Compton, and for obtaining property, to wit, a carload of lumber, of the value of $102, from the said John Compton, by means of false and fraudulent pretenses and representations, which said scheme and artifice is more fully set forth in the first count of this indictment, and the same is hereby referred to and made a part hereof.

And the said Simon A. Akers, in and for the purpose of executing said scheme and artifice, and in and for the purpose of attempting so to do, on the 30th day of June, in said division of said district, and within the jurisdiction of said court, did then and there unlawfully and knowingly place and cause to be placed in the post office of the United States at Atlanta, in the state of Georgia, a certain letter inclosed in an envelope with the postage prepaid thereon, and directed to Mr. John Compton, Chauncey, Ga., to be sent by the post office establishment of the United States, which said letter was and is as follows, to wit:

"All agreements contingent on strikes, accidents, delays of carriers, or other causes unavoidable or beyond our control.

"P. O. Box 76.                                  Telephone Connection.

            "Atlantic Lumber & Coal Company,

"Yellow Pine and Hardwood Lumber, Steam and Domestic Coal,

             "309 Fourth Natl. Bk. Bldg.

                              "Atlanta, Ga., June 30th, '13.

"Mr. John Compton, Chauncey, Ga.—Dear Sir: In answer to your letter of June 28th, we beg to advise that we have had some trouble selling car shipped by you on account of it having so many various lengths and dimensions, but we have ordered same moved to-day.

"Hoping this will be satisfactory, we beg to remain,

     "Yours very truly,

"A–G                            Atlantic Lumber & Coal Company
                                "[Signed]   S. A. Akers, Mgr."

Contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America.

There were similar counts relating to transactions with Hooks, McLendon, and the Windham Lumber Company.

Hooper Alexander, U. S. Atty., and John W. Henley, Asst. U. S. Atty., both of Atlanta, Ga.

Bell & Ellis and Little, Powell, Smith & Goldstein, all of Atlanta, Ga., for defendant.

NEWMAN, District Judge. There is a demurrer to the indictment in this case. I was very much inclined to believe that this case was controlled against the government in favor of the demurrer by the case of Etheredge v. United States, 186 Fed. 434, 108 C. C. A. 356; but I have re-examined it very carefully in the last few days, and I am not satisfied now that it is controlling in this matter, or hardly persuasive, in view of the language used. In the opinion by Judge Jones, towards the close of the opinion, this is said:

"A mere fraudulent promise to be performed in the future, whereby one obtains goods from another, without paying for them, disconnected from anything in the transaction which amounts to a 'scheme or artifice,' will not suf-

fice to uphold a conviction for a violation of section 5480 of the Revised Statutes as amended by the act of March 2, 1889. Whether such conduct would come within the statute, as it appears greatly enlarged in section 215 of the Penal Code (U. S. Comp. St. Supp. 1909, p. 1455), or whether the making of a fraudulent promise as a means of obtaining property, constitutes a 'scheme or artifice' within its meaning, is not involved in this writ of error, and no opinion is intended to be expressed as to it. The inclusion in the revision of the statute of the words 'for obtaining money or property by means of false or fraudulent pretenses, representations or promises,' not found in it before, after frequent amendments to broaden the scope of the legislation, is persuasive at least that Congress in its legislation prior to that amendment has not construed a mere false or fraudulent promise, standing alone, to constitute a 'scheme or artifice.' "

In the case of Bettman v. United States, decided by the Circuit Court of Appeals for the Sixth Circuit, 224 Fed. 819, 140 C. C. A. 265, the court, in the opinion by Circuit Judge Knappen, says this:

"We are asked to reject the Scheinberg Case upon the authority of Etheredge v. United States (C. C. A. 5) 186 Fed. 434, 108 C. C. A. 356, in which a construction is put upon section 5480 inconsistent with the construction of section 215 of the Code adopted in the Scheinberg Case [213 Fed. 757, 130 C. C. A. 271, Ann. Cas. 1914D, 1258]. We are not satisfied to follow the Etheredge Case, because we think some of the views there expressed are out of harmony with some of the decisions of this court (notably the Horman Case [116 Fed. 350, 53 C. C. A. 570], already cited), and because the case is opposed to the holding of the Circuit Court of Appeals for the Third Circuit in Culp v. United States, 82 Fed. 990, 27 C. C. A. 294 (cited with approval by this court in Milby v. United States, 109 Fed. 642, 48 C. C. A. 574), and with the decision of the Circuit Court of Appeals for the Fourth Circuit in Charles v. United States, 213 Fed. 707, 712, 130 C. C. A. 221, Ann. Cas. 1914D, 1251, decided since the adoption of the Criminal Code. It is, moreover, to be noted that the learned judge who wrote the opinion in the Etheredge Case expressly refrained from deciding whether the conduct involved in that case 'would come within the statute, as it appears greatly enlarged in section 215 of the Penal Code.' "

In the Scheinberg Case referred to (213 Fed. 757, 130 C. C. A. 271, Ann. Cas. 1914D, 1258) it is held:

"That the use of the words 'scheme or artifice' to defraud did not limit the offense to a predetermined plan or contrivance to mislead or seduce the public into parting with their money or property similar to several swindles expressly designated in the statute, but prohibited the use of the mails for the transmission of a false financial statement by defendant to commercial agencies, with intent that the same should be used as a basis for the purchase of goods by defendant on credit to which he was not entitled."

These cases and others which might be cited, and which were referred to by Judge Knappen in the Bettman Case, are not in harmony with the decision of our Circuit Court of Appeals. If our Circuit Court of Appeals, however, had determined what they did upon this statute as embodied in section 215 of the Penal Code, I should be disposed to follow them as being controlling authority in this circuit; but the language which I have quoted, in which the court states that "no opinion is intended to be expressed as to it"—that is, as to the new language used in section 215 of the Penal Code—makes that opinion no authority upon the question submitted in this demurrer.

I think the indictment states a case against the defendant, and the demurrer must be overruled.