### WORKIN et al. v. UNITED STATES. *

(Circuit Court of Appeals, Second Circuit. April 16, 1919.)

No. 116.

1. CRIMINAL LAW ⟜370, 371(1), 372—OTHER OFFENSES—EVIDENCE.

Under an indictment for conspiracy for the sale of narcotic drugs in connection with a physician in violation of Harrison Act Dec. 17, 1914, § 2 (Comp. St. § 6287h), evidence of sales made by defendants in the same manner after such physician had withdrawn and another had taken his place *held* admissible, as tending to show a continuing conspiracy and guilty knowledge and intent.

2. CRIMINAL LAW ⟜877—EFFECT OF ACQUITTAL OF ONE DEFENDANT.

On trial of three defendants for criminal conspiracy, the acquittal of one *held* not to invalidate a conviction of the others.

In Error to the District Court of the United States for the Southern District of New York.

Criminal prosecution by the United States against Isidore S. Workin and Henry V. Meyers. Judgment of conviction, and defendants bring error. Affirmed.

Lawrence B. Cohen, of New York City (Jacob Shientag, of New York City, of counsel), for plaintiffs in error.

Francis G. Caffey, U. S. Atty., of New York City (Ben A. Matthews, Lawrence H. Axman, Benjamin P. De Witt, Asst. U. S. Attys., all of New York City, of counsel), for the United States.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The plaintiff in error Workin was the owner of a drug store at 125th street and Eighth avenue, New York City. Meyers was a licensed druggist. Workin had been a salesman for a manufacturing concern, and with one Dr. Essendon entered the pharmacy business, calling their store the "Medicine Shop." Dr. Essendon maintained an office in the back of the drug store, and shortly thereafter withdrew from the partnership. Thereafter Workin always had associated with him some doctor who had an office in the rear of the store. After such relationship with some four doctors, Dr. Corish, came in response to an advertisement inserted in a newspaper by Workin, and established his office in the rear of the drug store. Prior thereto, Meyers assumed charge of the "Medicine Shop," and when Corish appeared, Meyers made the arrangements for the hire of the room.

---

The proof established that the drug store did a considerable business in the sale of morphine and heroin. Addicts of these drugs patronized it regularly. The doctor connected with the medicine shop would give written prescriptions to these addicts in an alleged endeavor to comply with the law. Whenever a person came intending to purchase such drugs, he was referred to the associated physician as "our doctor" (meaning the doctor connected with the drug store), who would thereupon give a prescription for the drug. The customers were personally introduced to the doctor, usually by Workin or Meyers, who would instruct the doctor to take care of the customer. New customers were asked, "How much have you been getting?" and after replying, either Workin or Meyers would reply, "Well, you had better start off higher with us because our doctor will have to gradually cut you down." The indictment consisted of four counts. The district judge dismissed the first two, submitting the question of guilt under the second and fourth count of the indictment to the jury. In substance it charged that on the 1st of January, 1917, and up to and including the day of the indictment, the plaintiffs in error, together with John L. Corish, did, within the jurisdiction of this court, unlawfully and feloniously conspire to commit an offense against the United States, to wit, to violate section 2 of the act of Congress approved December 17, 1914, c. 1, 38 Stat. 785, 786 (Comp. St. § 6287h), by selling and dispensing and distributing compounds and derivatives of opium not in pursuance of written orders to persons to whom such articles were sold, dispensed, and disbursed on forms issued in blank for that purpose by the Commissioner of Internal Revenue.

It charged that the plaintiffs in error conspired to procure Dr. Corish, a practicing physician, to issue narcotic prescriptions to persons to whom the drug was to be sold, the plaintiffs in error knowing and intending that the said prescriptions were given by Dr. Corish not in the course of his professional practice nor in good faith, and further that the recipients of such prescriptions would be induced by them to present the prescriptions at the drug store maintained by them, and that they would fill the prescriptions and dispense and distribute to the persons the kind and quality of drugs called for by them. Overt acts are alleged to have been committed in furtherance of the conspiracy, and, further, that Dr. Corish, as overt acts, issued to three certain persons, prescriptions for heroin which were sold and dispensed to the said certain persons by Workin and Meyers, as called for by the prescriptions.

The statute provides:

"That it shall be unlawful for any person to sell * * * any of the aforesaid drugs except in pursuance of a written order * * * on a form to be issued in blank for that purpose by the Commissioner of Internal Revenue. * * * Nothing contained in this section shall apply—

"(a) To the dispensing or distribution of any of the aforesaid drugs to a patient by a physician * * * registered under this act in the course of his professional practice only. * * *

"(b) To the sale * * * by a dealer to a consumer under and in pursuance of a written prescription issued by a physician, * * * registered under this act. * * *

"The commissioner * * * shall cause suitable forms to be prepared * * * to be distributed to collectors of internal revenue for sale by them."

The district judge submitted the case to the jury, instructing them that they may find the plaintiffs in error guilty if the concerted action of two or all of them was simply a mere means by which this drug should be distributed to unfortunate addicts who had indulged in the practice of using the drugs and who purchased, in the manner described by the witnesses, from the plaintiffs in error to satisfy their craving, or whether there was a genuine effort to secure their convalescence from what may be regarded as a disease. The evidence presented by the government required the submission of the guilt or innocence of the defendants to the jury. We are obliged to accept their finding.

The first assignment of error raises the constitutionality of the so-called "Harrison Act." Since the argument of the appeal and before our decision, the Supreme Court has decided that the law is constitutional, and that a conviction for crime thereunder will be sustained. Webb v. U. S., 249 U. S. 96, 39 Sup. Ct. 217, 63 L. Ed. 497; U. S. v. Doremus, 249 U. S. 86, 39 Sup. Ct. 214, 63 L. Ed. 493, decided March 3, 1919. No further discussion is necessary as to this assignment of error.

[1] As a second assignment of error, the plaintiffs in error charge that the district judge improperly admitted evidence showing other offenses not contained in this indictment and which was the subject of another indictment. The indictment charged a conspiracy commencing on January 1, 1917, and ending with the filing of the indictment on February 20, 1918. As stated above, the plaintiffs in error used their drug store, at all times having some doctor in the rear, who maintained an office there. It appears that after Dr. Corish severed his connection with the plaintiffs in error, which apparently was about February 8, 1918 (at least that is the last date when any of the government's witnesses testified to any relations with him), Dr. Ira E. Booth became associated with them. It appears that the other indictment then pending charged a similar crime, where both plaintiffs in error and one Dr. Ira E. Booth were charged with conspiracy. One of the government's witnesses was permitted to testify to a transaction wherein he purchased the drugs upon the prescription of a Dr. Booth after first consulting him. Objection was made to this testimony, which was overruled and an exception taken. This transaction with Dr. Booth and the subsequent purchase of the drugs occurred after Dr. Corish ceased to co-operate with the plaintiffs in error and before the date of the filing of the indictment. We think this testimony was properly received. The evidence proved a continuing conspiracy down to the date of the filing of the indictment. The plaintiffs in error at one time co-operated with Dr. Corish and later with Dr. Booth. It was one conspiracy. It did not terminate when Dr. Corish dropped out, and Dr. Booth was substituted. It was not evidence of a distinct and independent crime and was admissible. Further, the rule of evidence is well settled that as to similar facts the commission of one act may not be proved by the commission of other similar acts, but to

this rule there is the exception that in certain cases evidence of similar facts may be introduced to prove, not the commission of an act, but that there was a criminal intent. By evidence indicating the relations of the plaintiffs in error with Dr. Booth, the government did not seek to prove that they sold heroin on the date charged in the second count of the indictment, and the government was well within its rights in introducing this evidence for the purpose of showing that then the plaintiffs in error sold heroin on the date charged in the indictment; that they did so, not innocently or through mistake, but with knowledge and intent to violate the law. To show guilty knowledge and intent, it is permissible to show that before and after the date on which the specific act charged was committed the plaintiffs in error sold drugs to others.

In the case of Marshall v. U. S., 197 Fed. 511, 117 C. C. A. 65, relied upon by the plaintiffs in error, the defendant was charged with a scheme to defraud and for using the mails in furtherance of the scheme. The defendant organized a so-called society to carry out this purpose. Evidence was offered on the trial that the defendant had also organized another society for the purpose of promoting another scheme to defraud. It was held that these were independent transactions, and evidence of the second transaction could not be properly received to prove the intent or guilt of the defendant as to the first.

In Hammer v. U. S., 249 Fed. 336, 161 C. C. A. 344, the defendant was charged with selling drugs in violation of the Harrison Act. Evidence was introduced showing that the defendant did business in Florida, and there conducted a medical institute frequented by dopers and persons who were sick. This court approved the receipts of evidence to show that before and after the date of the commission of the specific act charged the defendant sold drugs to others.

Thus, to permit testimony of other sales of drugs, it must be made to appear that there is some real connection between the extraneous crime and the crime charged, and it is only in the case where committed offenses are proven, which are unrelated to the subject-matter of the indictment and which the accused is not summoned into court to meet, that the courts hold the receipt of such testimony is improper. Scheinberg v. U. S., 213 Fed. 757, 130 C. C. A. 271, Ann. Cas. 1914D, 1258.

Here there was a direct and immediate connection between the transaction involving Dr. Corish and the transactions involving Dr. Booth. The employment or association of Dr. Booth immediately after that of Dr. Corish indicated but a plan to continue the service of another physician in order to obtain some one to issue these prescriptions. Merely because Dr. Corish may have withdrawn from the conspiracy, after which Dr. Booth joined the conspiracy, if the conspiracy continued until the date of the filing of the indictment, did not make incompetent evidence to show what Dr. Booth and the plaintiff in error did in furtherance of the conspiracy, for such acts constitute part of it. We think, further, that the transactions or acts of Dr. Booth were so closely related to the act in question as to show that they all sprang from a common design. Williamson v. U. S., 207 U.

S. 425, 28 Sup. Ct. 163, 52 L. Ed. 278; People v. Molineux, 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193.

We find no error in the admission of this testimony.

[2] Corish was acquitted on the trial, and it is argued in behalf of the plaintiffs in error that his acquittal prevents them from being adjudged guilty under the law. The only count submitted to the jury was the conspiracy count, the others, excepting the second, having been dismissed by direction of the court, and the plaintiffs in error were found guilty of the second count (as well as the fourth) which charged a direct sale by them, aided and abetted by Dr. Corish. Judgment on this count was arrested by the district judge, and is not presented here for review. This conviction must be tested only from the viewpoint of the charge of conspiracy. The verdict of the jury must be understood as establishing only the guilt of the plaintiffs in error of having conspired to violate the law in the manner alleged, and establishing that Dr. Corish's participation in the conspiracy was not proven beyond a reasonable doubt. The fact that he was acquitted could not establish conclusively that the prescriptions for narcotics issued by him were issued in good faith. Assuming Corish was innocent, as we must assume by the jury's verdict, and that he acted in good faith, the jury may well have found that the plaintiffs in error used Corish for the purpose of accomplishing the object of the conspiracy charged against all of them. Under the charge and under the law, it was permissible for the jury to find two or more joined the conspiracy, or conspired and approved of one overt act committed by any one of the conspirators for the purpose of effecting the object of the conspiracy, and this was sufficient. During Dr. Corish's association with the plaintiffs in error, he was addicted to the habit of drinking; he was in a drunken condition most of the time. It may be that the jury thought that he was but a tool in the hands of the plaintiffs in error.

Proof is ample to justify the conclusion that the plaintiffs in error conspired to violate this statute and used Dr. Corish to write prescriptions for narcotics without any relation to the prospect of curing the disease or its alleviation. The evidence is ample that the plaintiffs in error conspired that the prescriptions should not be issued in good faith.

We find no error in the record which warrants the granting of a new trial. Judgment affirmed.