## UNITED STATES v. SEEMAN et al.

### No. 102.

Circuit Court of Appeals, Second Circuit.

Nov. 12, 1940.

Henry Gallop, of Brooklyn, N. Y., and Clark, Gagliardi & Cunningham, of White Plains, N. Y., (Charles T. Murphy, of White Plains, N. Y., of counsel), for Solly Seeman, defendant-appellant.

John T. Cahill, U. S. Atty., of New York City (John C. Walsh, Asst. U. S. Atty., of New York City of counsel), for the United States of America, plaintiff-appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The defendant Solly Seeman was convicted of conspiring with other defendants to violate Section 415 of Title 18 of U.S. C.A., which provides for the punishment of: "Whoever shall transport or cause to be transported in interstate or foreign commerce any goods, wares, or merchandise, securities, or money, of the value of $5,000 or more theretofore stolen or taken feloniously by fraud or with intent to steal or purloin, knowing the same to have been so stolen or taken * * *."

Solly Seeman and Morris Pollock were found guilty after a trial by a jury, and six of the other defendants pleaded guilty. Solly Seeman alone has appealed.

The record amply established that $27,-500 worth of Consolidated Farm Loan Bonds were stolen from Union Trust Company of Pittsburgh, Pennsylvania, on March 22, 1938, and that $10,000 of these bonds were brought by Robert Singerman, one of the defendants, to W. Bansen & Co., a bond house in the Southern District of New York. On July 28, 1938, Singerman was given sterling currency and a check in payment for $2,000 of these bonds and on July 29, 1938, was given sterling currency and a check in payment for $3,000 of them. The remaining $5,000 of the bonds were sold in the same way on August 2, 1938.

It is argued on behalf of the appellant Solly Seeman that he had no knowledge that any of the bonds dealt with were stolen and particularly that he had no knowledge of or connection with a plan for their transportation in interstate commerce.

We think that the proof was sufficient to show an arrangement in which Solly Seeman was an active participant to have stolen bonds transported in interstate commerce and that the judgment of conviction ought therefore to be affirmed.

As evidence of Solly Seeman's guilty knowledge it appears from the testimony of Singerman that in June 1938 he saw Solly in the room of Solly's brother Jack; that later in July there was a discussion between the Seemans and the defendant Steinberg about disposing of Federal Farm Loan Bonds; that in that conversation it was questioned whether the bond house through which the bonds were to be sold by Singerman would not get suspicious of the Federal Loan bonds and fear was expressed as to having Singerman handle them. After Singerman received the Federal Loan bond for $5,000 from Jack Seeman and disposed of it on August 2, Jack and Solly said they thought he had made a mistake in selling it, apparently because it was of such a large amount as to arouse suspicion. On an earlier occasion Singerman had a conversation with the Seemans in which they ask-

ed him whether the proceeds of certain stolen securities had been "got away with" by two of the other defendants. There was evidence that Solly was to share in the proceeds of sale of these and other stolen securities. While it is argued that proof that Solly Seeman dealt with other stolen securities was incompetent because it did not tend to show that there was any knowledge on his part of a purpose to cause the securities covered by the indictment to be transported in interstate commerce, we can see no reason why proof of dealing in stolen goods was not competent to show a guilty knowledge in respect to the bonds in question even though proof of an intent to cause them to be transported in interstate commerce has to be supplied from other sources.

If other evidence was necessary to establish an intent that the Farm Loan Bonds were to be transported in interstate commerce, nevertheless proof of the receipt of other stolen goods are thus transported would tend to support the government's case pro tanto. A complete identity of all the factors in the case at bar and in the other cases was not necessary to render the proof competent. Nakutin v. United States, 7 Cir., 8 F.2d 491, certiorari denied, 269 U.S. 585, 46 S.Ct. 201, 70 L.Ed. 425. Accordingly Solly's sales of the stolen certificate of 100 shares of Reynolds Tobacco B stock, and of the bonds stolen from the Surrogates Court, and of the stolen National Steel bonds were competent evidence of his guilty knowledge and intent to participate in the conspiracy alleged (pp. 502, 346).

But there was also proof of similar acts in which transportation in interstate commerce was involved. On July 19, 1938, Solly personally delivered to one Mahler a $5,000 United States Treasury Note that had been stolen in Nebraska on May 23, 1938, from the Omaha National Bank and was disposed of in Syracuse. Likewise about August 12, 1938, Solly delivered to Mahler a $5,000 Consolidated Federal Loan bond, which was other than the Consolidated Federal Loan bond heretofore mentioned. This bond was stolen from the Union Trust Company of Pittsburgh on May 22, 1938.

That similar acts may be proved in order to show guilty knowledge is settled in this circuit. United States v. Brand, 79 F.2d 605, 606; Workin v. United States, 260 F. 137; Sapir v. United States, 174 F. 219.

Solly threatened Steinberg for not giving him a proper share of the avails of stolen securities. He said at a meeting with Steinberg and Jack Seeman in New York on July 14, 1938: "This is an affair we split, * * * I was not putting up money to make up shortages and running around and coming in on all the deals, and * * * on all these conversations, for the love of it." After this conversation it was arranged to procure more stolen securities, and a few days later Jack and Solly Seeman said to Steinberg that "the only thing they could get at the moment was some Federal Farm Loans." Shortly afterwards Jack delivered to Singerman the Federal Farm Loan bonds referred to in the indictment which were sold under an agreement whereby Solly was to have a fourth share in the profits from the sales. Prior to this agreement Solly was only to receive a share of profits distributed to his brother Jack.

It is evident from the foregoing that the appellant was constantly engaged in dealing with stolen securities. In the case of the Treasury Note for $5,000, stolen from the Bank of Omaha and brought from Nebraska to New York, he personally delivered it to Mahler who sold it to a man named Crimmins in Syracuse. The Consolidated Federal Loan Bonds referred to in the indictment were delivered to the persons who were to market them by Solly's brother Jack. One of the defendants, Blaser, testified that in July Steinberg or Weinman said that the "manager," meaning Jack Seeman, had sent to Pittsburgh, Chicago, Detroit, to see what they could pick up there. He kept telling us "it looks like we were going to get some more merchandise" (p. 231).

The evidence we have mentioned, Steinberg's testimony that Solly "arranged calls and arranged to get merchandise," and Weinman's testimony that in July 1938 Solly said: "We have some wires out for merchandise," all closely connect him with the conspiracy.

In view of Solly's intimate contact with the enterprise of marketing stolen securities and the proof of his attempts to get them from other states, it is unreasonable to argue that a jury was not justified in finding that he participated in a conspiracy for the transportation in interstate com-

merce of stolen securities knowing that they were stolen. The proof was considerably stronger than in many cases where a conviction has been sustained, for here there was much more than possession by the conspirators of stolen securities. There was ample proof of a plan in which the appellant was engaged both to procure such securities and also to share in the profits derived from their sale. Boehm v. United States, 2 Cir., 271 F. 454; Rosen v. United States, 2 Cir., 271 F. 651; Drew v. United States, 2 Cir., 27 F.2d 715; United States v. DiCarlo, 2 Cir., 64 F.2d 15.

The activity of both Solly and his brother Jack in procuring securities stolen in other states and transported to New York where they were disposed of makes it quite unlikely that they were not the procuring cause of the transportation of the Farm Loan bonds referred to in the indictment and that they were not aware of the various steps in the enterprise.

■ It is contended on behalf of the appellant that the trial judge erred in his charge as to the presumption which would arise from a finding by the jury that the defendants (including Solly Seeman) were in possession of the Farm Loan Bonds stolen from the Union Trust Company of Pittsburgh. The jury might infer from the possession of these bonds that the defendants had caused them to be transported knowing them to be stolen. Properly speaking there was not a presumption of law but only an inference, which might be drawn from the facts, that Solly was guilty of the crime charged. The use of the word "presumption" by the judge did not, in our opinion, mislead the jury, for he left to them the determination of whether the dealings of the defendants with the securities occurred soon enough after their abstraction from the Union Trust Company in Pittsburgh to justify an inference of guilt.

■ It is argued that Solly was never shown to have been in possession of the Farm Loan bonds in question. There was evidence, however, that he and his brother were both engaged in obtaining these and other similar stolen bonds and having them transported in interstate commerce. Indeed, the proof is abundant that Solly was engaged in a conspiracy thus to bring in stolen bonds and to dispose of them at a profit in New York. Physical possession of any of the bonds mentioned in the indictment by some of the conspirators (in this case by Solly's brother Jack) might reasonably be found to have been for the account of Solly as one of the joint adventurers, and if so found would be sufficient to justify the inference that Solly knowingly participated in causing the transportation of the stolen securities in interstate commerce. Weisman v. United States, 8 Cir., 1 F.2d 696, 698. There was also enough proof to sustain the verdict even without the inference arising from the physical possession at one time by Jack Seeman of the Farm Loan bonds and his delivery of them to one of his co-conspirators. Such possession strengthened the other proof against all the defendants by the inference of guilt naturally flowing from it.

■ The acquisition of any information by the government through wire taps or intercepted messages did not result in an unfair trial or involve error. So far as Solly Seeman was directly concerned the interceptions were in 1936, at a time when investigations were being made of matters that had occurred two years before the abstraction of the bonds from the Union Trust Company of Pittsburgh. There is no reason to suppose that any clues were obtained in 1936 which aided the prosecution of the present case. The remoteness of time and the testimony of the government's witness Milensky that nothing of importance was heard, or indeed much of anything other than the sound of Solly's voice, justified the refusal of the trial judge to require the production of office reports of the Federal Bureau of Investigation, made at the time.

■ ■ Any information derived from the tapping of the wire of the defendant Steinberg in 1938 and 1939, or from intercepted telephone communications with other defendants after the conspiracy was terminated, was not a matter of which the appellant could complain. The constitutional privilege against a wrongful search and seizure of papers is one that can only be invoked by the person subjected to the search. We cannot suppose that Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307, involved a holding by the Supreme Court that the statutory protection is broader. Moreover, none of the messages to the other defendants, which were unlawfully intercepted in 1938 and 1939, furnished any clue tending to implicate the appellant in the alleged conspiracy. His wire was not tapped, nor does it appear that he was even mentioned in the in-

tercepted conversations of the other defendants. They were examined and subjected to cross-examination by appellant's counsel but no evidence was thereby obtained that affected Solly Seeman. Under the circumstances we do not think that the government should have been compelled to produce its records and thus disclose its evidence to the appellant.

Judgment affirmed.